COST v. SHINAULT.

Opinion delivered April 27, 1914.

SCHOOLHOUSES—RIGHT OF DIRECTORS TO LEASE BUILDING FOR OTHER PUR-POSES.—School directors who have the custody and control of public school buildings may permit the use of the building for other purposes, provided the use of the building as a schoolhouse is not in any way interfered with.

Appeal from Lawrence Chancery Court; *George T. Humphries,* Chancellor; affirmed.

*W. A. Cunningham,* for appellants.

1.  School directors have·no right to lease a school building for any other than school purposes. Kirby's Digest, § 7643; 35 Cyc. 943; 22 Am. Rep. 268; 32 So. 961; 37 Atl. 853; 73 Pac. 509; 69 Ark. 204.

2.  Taxpayers may enjoin such lease for other purposes. 69 Ark. 204; 73 Pac. 509; 15 Kan. 259; 22 Am. Rep. 268.

*W. E. Beloate,* for appellees.

1.  The directors had the power to make the lease. Kirby's Digest, § § 7613, 7614; 95 Ark. 26.

2.  The contract was good for the district.    69 Ark. 204.

SMITH, J.    Appellants were plaintiffs below, and alleged the following facts in their complaint: That they were citizens and taxpayers of School District No. 64 of Lawrence County, Arkansas, and interested in the educational interests of that district, and that appellees, who were defendants below, were school directors of said district, and as such had control of the schoolhouse and grounds, and that school was being taught in the school building, all of which was needed for the accommodation of the children attending school. That the said directors, notwithstanding that fact, are about to lease a part of said building to the Independent Order of Odd Fellows, as a lodge hall, and are about to cause said building to be remodeled without right or authority from the voters of said district, by causing the stairway to be moved and other changes to be made, and that if such changes are made it will entirely unfit the building for the use for which it was originally designed, and will make the same totally unfit for use as a school building.

That the use of said building as a lodge room is entirely inconsistent with its use as a school, and will interfere with the use and enjoyment of the other rooms of the building as school rooms, and will cause great and irreparable injury to the public and°interfere with the educational interests of said district.

Plaintiffs prayed that said directors and all other persons be forever enjoined from changing or altering

said building in any way, without first submitting the plans thereof to the voters of said district, and that said directors be enjoined from leasing any part of the building to any person, for any purpose whatever, except for the conduct of schools.

The answer denied that the directors were about to make any change in the building, which was detrimental to it, or any contract or lease with reference to the use of the building, which would in any way interfere with the school being taught therein.

There was offered in evidence a contract dated December 27, 1911, made between representatives of the local Odd Fellows Lodge and the directors of the district, under the terms of which for the consideration of $50, to be paid on or before October 1, 1912, the directors rented to said lodge the upper part, or second story, of the school building for the use of said lodge, for a term of one year from January 1, 1912, with an option to renew said lease for a period of five years. The school district, however, reserved the right to use the building for school exhibitions and entertainments of its own.

At the annual school election in May, 1912, the directors caused the question of the ratification of this lease to be submitted to the electors voting at that election, and it was ratified by a vote of nineteen for, and one against.

It appears that the revenues of the district had been insufficient to provide the necessary funds for school purposes, and subscription lists had been circulated upon which private contributions were asked for school purposes. The evidence was conflicting as to the interference with the school on account of this lease, and of the damage to the building in adapting it to the uses of the Odd Fellows. But the court found the fact to be that no damage was occasioned to the said school building by reason of the changes made in the building by the Odd Fellows Lodge, and that no interference had resulted, or would result, to the school being taught, or that would thereafter be taught in said building, by reason of the upper story thereof being used as a lodge room, and that the

plaintiffs' complaint should be dismissed for want of equity.

We think this finding was not contrary to the preponderance of the evidence.

Appellants cite us to section 7643, of Kirby's Digest, which provides that directors may permit a private school to be taught in the district schoolhouse during such time as the said house is not occupied by a public school, unless they be otherwise directed by a majority of the legal voters of the district, and contend that the express granting of power for this purpose is in effect a denial of power to let it for any other purpose. But we do not agree with that contention. Section 7614, of Kirby's Digest, provides that the directors shall have charge of the school affairs and the school educational interests of their district, and shall have the care and custody of the schoolhouses and grounds and property of the district, and shall carefully preserve same, and gives to them authority to purchase or lease a schoolhouse site and to rent, purchase or build a schoolhouse with the funds of the district. And this section vests them with the duty and discretion of making the most advantageous arrangements possible, within the powers conferred, for the interest of the district. In the case of *Boyd* v. *Mitchell,* 69 Ark. 202, this section was construed to give school directors the right to prohibit the use of a school building for religious worship, where it was shown the building and contents were being injured, notwithstanding the land on which the school building was situated was conveyed to trustees for the purpose of religious worship, and was by them conveyed to the school directors for the same purpose, and the building was erected in part by subscriptions, with the understanding that it was to be so used under the charge of the directors. The court pretermitted any discussion of the power of the directors to make any arrangement to build a house to be used as a schoolhouse, and also as a church or as a place for re-

ligious worship, as it found, under the facts in that case, that the schoolhouse was, when built, to be under the control of the directors of the school district and the property of said district, and after so finding the facts to be, it was there said: "If it was to be under their control, in contemplation of law it was within their province, and was, perhaps, in strictness, their duty, not to allow it used for purposes other than school purposes. It seems that this is apparent. They have no power beyond those expressly granted or arising by necessary implication." The court found in that case that the schoolhouse was being damaged by the use which was being made of the building, and that the directors in the exercise of their power of control, and their duty to preserve the property of the district, had the right to prohibit the use of the schoolhouse for religious purposes, and that this was true notwithstanding the individual contributions which had been made, and which were used in erecting the schoolhouse, upon the understanding that the house was to be used as a schoolhouse and for religious worship.

So here, we should not hesitate to hold that the contract was void, if its performance interfered with the school. But the chancellor has expressly found that such was not the case. The electors of that district, who were the patrons of that school, voted for the ratification of the contract, and in their depositions made it appear, by a preponderance of the evidence, that the schools were not being interfered with nor the building damaged. Upon the contrary, the revenues of the district were being supplemented by the annual rental in the sum of $50, and under the circumstances we think the contract was not an unlawful one, nor void as being against public policy. Of course, the district could not divert its funds for the purpose of building or providing lodge rooms for any association or society, however benevolent its purposes might be, neither would the directors have the right to make any contract which authorized the use of the school property in a manner which interfered with the schools. But as has been stated, that was not done in this case.

It is a matter of common knowledge that many *quasi-*public uses are made of the rural school buildings of the State. We do not believe it was the purpose of the Legislature in granting express authority for private schools to be taught in the public school building, to exclude other uses where such uses do not interfere with the schools nor injure the buildings.

We think the decree of the chancellor is correct, and it is affirmed.