# Sherrard v. Jefferson County Board of Education et al.

Dec. 18, 1942.

Robert Hubbard for appellant.

Johnson & Johnson and Henry M. Johnson for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

This case involves the question of the constitutionality of Chapter 66 of the 1940 Acts of the General Assembly of Kentucky, entitled:

"An Act to amend and re-enact Chapter 65, Article V, Section 15 of the Acts of the General Assembly of 1934, by appending a clause to Section 15 (Section 4399-20, Carroll's Kentucky Statutes, 1936) providing for the transportation of school children attending schools other than public schools."

Among other things, the Act provides that:

"Schools shall be maintained for pupils of elementary grade within a reasonable walking distance of their homes or the board of education shall furnish transportation from its general funds or otherwise for any elementary pupil or pupils who do not reside within such distance, and any board of education may provide transportation from its general funds or otherwise for any pupil or pupils of any grade or grades who do not live within a reasonable walking distance from the school; * * *. Pupils attending private schools shall be entitled to the same rights and privileges as to transportation to and from school as are provided herein for pupils of public schools."

The appellant, a citizen, resident, and taxpayer of Jefferson County, Kentucky, questioning the constitutionality of the Act, brought this action in the Jefferson circuit court under the Declaratory Judgment Act, section 639a—1 et seq., of the Civil Code of Practice, against the Jefferson County Board of Education asking for a

declaration of rights of the parties and that the Act be declared unconstitutional. Plaintiff alleged that the General Assembly of Kentucky did amend section 4399-20, Carroll's Kentucky Statutes, 1936 edition, by appending thereto the words "Pupils attending private schools shall be entitled to the same rights and privileges as to transportation to and from school as are provided herein for pupils of public schools," and that the real purpose and intention of the General Assembly by said amendment was and is to divert the common and public school funds to the support of sectarian, private and parochial schools, contrary to and in violation of sections 3, 5, 59, subsection 25, 171, 184, 186, 188 and 189 of the Constitution of Kentucky; that the members of defendant Board of Education can, may or might divert the public school funds raised by taxation or otherwise for the purpose of common and public schools of Jefferson county and the State of Kentucky to channels not intended by and contrary to the Constitution of Kentucky. He further alleged that an actual controversy exists between him and the defendant Board of Education and the members thereof as to whether or not the aforesaid Act is, or is not, contrary to the above mentioned sections or any provision of the Constitution of Kentucky, plaintiff contending that it is contrary to the Constitution and therefore void, and defendants contending that it is not contrary to any provisions of the Constitution and is therefore constitutional. Later plaintiff filed his amended petition naming Honorable John W. Brooker, State Superintendent of Public Instruction, and other members of the State Board of Education, parties defendant. Before any defense was made by the State Superintendent of Schools or the State Board of Education, plaintiff dismissed the action as to them without prejudice. The defendants, members of the Board of Education, filed their answer denying that the Act was unconstitutional and claimed that it was a valid exercise of police power and that children attending private schools were merely complying with compulsory education laws of this State and were under the supervision of the State Board of Education and that the Jefferson County Board of Education was merely fulfilling its statutory obligation in transporting children or pupils to private schools, and the Act was for the aid of the *pupils* and not for the aid of the *schools*. The answer also prayed for a declaration of rights, and that the

Act be held valid. An agreement was then entered controverting of record all affirmative allegations of both parties. Upon a hearing of the case the court refused to declare the rights of the parties and, of its own motion, dismissed plaintiff's petition without prejudice, and granted an appeal to this court. The chancellor filed an opinion setting out his reasons for refusing to declare the rights of the parties and dismissing the action, the principal reason being that the State Board of Education was a necessary party to the action.

If there exists a defect of parties such as to prevent the court from determining the rights of the parties, then it would become the duty of this court to remand the case to the circuit court. The question is whether such defect of parties really exists. A similar question or contention was made in the case of Board of Education of Louisville v. City of Louisville et al., 288 Ky. 656, 157 S. W. (2d) 337, 342, which case involved the Teachers' Retirement Act (Acts of the 1938 General Assembly, 1st Ex. Sess., Chapter 1). In that case it was insisted that there was a defect of parties because the beneficiaries of the Teachers' Retirement Fund were not made parties thereto, and the circuit court declined to declare the rights of the parties because of this alleged defect. In disposing of that question we said:

> "* * * It would have been better had they been made parties, either individually or by representation. Declining to declare the rights was within the discretion of the circuit court. Section 639a—6, Civil Code of Practice. Ordinarily, we would follow the same course, but an important public question is involved which should be decided as early as practicable, and, under the view we have, an adjudication will not adversely affect the rights of the beneficiaries. So we shall dispose of it. This is in accordance with the spirit and purpose of the Declaratory Judgment Act. Section 639a—1 et seq., Civil Code of Practice."

Section 639a—6, Civil Code of Practice, being part of the Declaratory Judgment Act, provides that this court in its consideration of a case shall not be confined to errors alleged or apparent in the record. It appears that under the provisions of the Declaratory Judgment Act the same strictness in pleadings and practice is not required as may be required in other cases. The pleading

is sufficient if it shows that a bona fide controversy exists between the parties, and the facts and subject matter out of which it arises. As was said in the case cited supra, it might have been better had the State Board of Education been made parties defendant. But we do not think that was necessary to enable the court to pass upon the constitutionality of the Act which was the only issue involved, and a determination of that question determines the rights of the parties. In brief of defendants the question of defects of parties is not insisted on and they also ask this court to consider the case on the merits and declare the Act constitutional.

Another reason assigned by the chancellor for his refusal to make a declaration of rights is that the question involved is of state-wide interest and affects all local School Boards in the State and the pupils thereof. The same might be said concerning any litigation involving local School Boards involving the question of levying and collecting taxes, issuance of bonds, hiring of teachers, and many other things too numerous to mention, yet it has never been held that the State Board should be made a party to such litigation. If local Boards of Education were mere agents of the State Board and were not possessed of any inherent power of discretion of their own, and acted only pursuant to authority and orders of the State Board, a different question would be present. We do not think that the fact that the question here involved might be of state-wide interest, or that the State Board exercises a general supervisory power over the State school system, means that the State Board should have been made a party to the action. Nor does the fact that the chancellor declined to declare the rights of the parties mean that this court may not, in the exercise of its discretion, make a declaration of rights in accordance with the spirit and purpose of the Declaratory Judgment Act, there being an important public question involved. Board of Education v. City of Louisville, supra. The facts disclosed in the pleadings and the authorities herein cited impel us to the conclusion that the chancellor might have disposed of the case on its merits by making a declaration of rights, and since he refused to do so, this court has the right to determine the case on the merits and to declare the rights of the parties.

We now come to consideration of the case on the merits; namely, does the Act under consideration offend

any provisions of the Constitution? Section 171 of the Constitution, so far as is pertinent, reads:

> "The general assembly shall provide by law an annual tax, which with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only * * *."

Section 183 of the Constitution reads:

> "The general assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the state."

Section 184 of the Constitution, after mentioning a certain bond of the Commonwealth and a certain fund in the Bank of Kentucky held by the Board of Education, provides that said fund and its proceeds shall be held inviolate for the purpose of sustaining the system of common schools and the interest and dividends of said fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose. And, it is further provided:

> "No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters * * *."

The Constitution does not undertake to define what is meant by the words "common schools" but there is no longer any room for controversy or dispute as to the meaning of those words. In Pollitt v. Lewis, et al., 269 Ky. 680, 108 S. W. (2d) 671, 673, 113 A. L. R. 691, the court said:

> " 'The words "common schools" have in themselves no ascertained and definite signification.
>
> " 'It is only by looking into the history of the common-school system in Kentucky that we are enabled to understand what was meant by those words. If we look to the legislation on this subject prior to the adoption of the present Constitution we find that a common school was a school taught in a district laid out by authority of the school laws, under the control of trustees elected under those laws, by a teacher qualified according to law to teach. (Secs. 18, 19, and 22 Act 16th of February, 1838, 3 Stat. Laws, 528; sec.

3 Act 1st of March, 1842; Ibid, 541; secs. 7 and 11 Act 10th of March 1843, Sess. Acts, 73). And all the legislation on the subject since the adoption of the Constitution has recognized this definition as being correct as far as it goes.' ''

Also, section 4363-2 Carroll's Kentucky Statutes, reads in part:

"A 'common school' shall be interpreted as meaning an elementary and/or secondary school of the Commonwealth supported in whole or in part by public taxation. No school shall be deemed a 'common school' as defined in this act or receive support from public taxation unless such school be taught by a qualified teacher or teachers for a term of seven or more months during the school year and at which every child residing in the district, between the ages of six and eighteen years, has had the privilege of attending, * * *.''

This statute was not repealed or modified by the 1940 Act under consideration and is still in force and effect. Many other authorities might be cited to the same effect, but we deem it unnecessary to further pursue this question, since it is well settled that the words "common schools" as used in the Constitution mean "public" or "free" schools maintained by the State at public expense, as distinguished from any private, parochial or sectarian school. In fact, defendants do not contend otherwise, but defend the constitutionality of the Act upon the sole ground that it is a valid exercise of the police power of the State for the benefit *and aid of the children and not for the school*, thus attempting to draw a distinction between the "school" and the "children" attending the school. To support their contention defendants rely upon the case of Cochran v. Louisiana State Board of Education, which was appealed to and decided by the Supreme Court of the United States, 281 U. S. 370, 50 S. Ct. 335, 74 L. Ed. 913, involving the constitutionality of an Act of the legislature of Louisiana in making an appropriation "to [supply] school books to the school children of the State of Louisiana." Act No. 100 of 1928. The State of Louisiana has a constitutional provision somewhat similar to our Constitution (Sec. 189) prohibiting the use of public funds in aid of any church, sectarian or denominational school.

In the Louisiana case the court held that the appropriation to supply school books to the children of the State of Louisiana was for the benefit of the children rather than the schools. Conceding, without deciding, that that case may tend to support the contentions of defendants, yet in view of our various constitutional provisions on the subject and other authorities cited, we are not inclined to follow the rule announced in that case, and perhaps other similar cases. We think the sounder rule is enunciated in the case of Gurney et al. v. Ferguson et al., 190 Okl. 254, 122 P. (2d) 1002, 1003. There was involved in that case the constitutionality of an act of the Oklahoma legislature which reads:

"That whenever any school board shall, pursuant to this Section or to any law of the State of Oklahoma, provide for transportation for pupils attending public schools, all children attending any private or parochial school under the compulsory school attendance laws of this State shall, where said private or parochial school is along or near the route designated by said board, be entitled equally to the same rights, benefits and privileges as to transportation that are so provided for by such district school board." (70 O. S. 1941 sec. 1196.)

The act was attacked as being unconstitutional under the following section of the Constitution of Oklahoma:

"No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such." (Article 2, sec. 5).

It is to be noticed that the constitutional provision does not mention "private or parochial school" as appears in the legislative Act, nor does the latter mention any "sect, church, denomination, or system of religion" as appears in that section of the Constitution. It was held, however, that the words "sectarian institution" included educational institutions maintained and conducted so that the children of the parents of that particular faith would be taught in that school the religious tenets of the church, and since the legislative act pur-

ported to authorize the expenditure of public or common school funds to be used for the benefit of schools or institutions other than common or public schools or institutions, it was therefore unconstitutional. It was urged in that case, as in the present case, that the act did not result in the use of public funds for the benefit or support of sectarian institutions or schools as such, but such benefits as flow from the act accrued to the benefit of the individual child or to a group of children as distinguished from the school as an organization. In answer to that argument, the Supreme Court of Oklahoma said:

"* * * A similar argument was said to be 'utterly without substance' in Judd v. Board of Education, 278 N. Y. 200, 15 N. E. (2d) 576, 582, 118 A. L. R. 789. It is true this use of public money and property aids the child, but it is no less true that practically every proper expenditure for school purposes aids the child. We are convinced that this expenditure, in its broad and true sense, and as commonly understood, is an expenditure in furtherance of the constitutional duty or function of maintaining schools as organizations or institutions. The state has no authority to maintain a sectarian school. Surely the expenditure of public funds for the erection of school buildings, the purchasing and equipping and the upkeep of same; the payment of teachers, and for other proper related purposes is expenditure made for schools as such. Yet the same argument is equally applicable to those expenditures as to the present one.

"If the cost of the school bus and the maintenance and operation thereof was not in aid of the public schools, then expenditures therefor out of the school funds would be unauthorized and illegal. Yet, we assume it is now acquiesced in by all that such expenditures are properly in aid of the public schools and are authorized and legal expenditures. If the maintenance and operation of the bus and the transportation of pupils is in aid of the public schools, then it would seem necessarily to follow that when pupils of a parochial school are transported that such service would likewise be in aid of that school.

"The expenditure of public funds for the purpose here shown is confined to children attending

school. Thus refuting any argument that such transportation is for the benefit of children generally and not for schools or that such transportation is furnished in regulating traffic within the police power, or primarily in promoting the health and safety of the children of the state. In Consolidated School Dist. v. Wright, 128 Okl. 193, 261 P. 953, 56 A. L. R. 152, it was held that transportation of pupils is an act done in carrying into effect the educational program contemplated by the Constitution and statutes.

"The appropriation and directed use of public funds in transportation of public school children is openly in direct aid to public schools 'as such.' When such aid is purported to be extended to a sectarian school there is in our judgment a clear violation of the above-quoted provisions of our Constitution. It is our duty only to read the applicable provisions of the Constitution and analyze them and apply to the question here the intent and purpose disclosed by the expressions in the Constitution. That document embraces the fundamental and basic law of the state, and courts and judges, like everybody else, are bound to follow it. 'It is not the province of the courts to circumvent it because of private notions of justice or because of personal inclinations' as was said in the Judd case, supra."

See, also, State ex rel. Traub v. Brown, 6 W. W. Harr., Del., 181, 172 A. 835; Synod of Dakota v. State, 2 S. D. 366, 50 N. W. 632, 14 L. R. A. 418; State ex rel, Van Straten v. Milquet, School Treas., 180 Wis. 109, 192 N. W. 392; Williams et al. v. Board of Trustees Stanton Common School Dist., 173 Ky. 708, 191 S. W. 507, L. R. A. 1917 D, 453.

It is obvious that the Louisiana case and a few others of similar import relied on for defendants are contrary to the great weight of authority, and are lacking in persuasive reasoning and logic. We are of the opinion, therefore, that the Act here under consideration is unconstitutional and therefore void.

The judgment is reversed and remanded with directions to set aside the order dismissing plaintiff's petition and to enter a judgment consistent with this opinion.

Whole court sitting.