ARCH R. EVERSON, PROSECUTOR, v. BOARD OF EDUCA-
TION OF THE TOWNSHIP OF EWING ET AL., RE-
SPONDENTS.

Submitted October 5, 1943—Decided September 13, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Harold T. Parker; Joseph Beck Tyler*, *amicus curiæ* (*Albert McCay*, of counsel).

For the respondents, *John Solan* and *William Abbotts*.

The opinion of the court was delivered by

PARKER, J.  The question raised by this writ, and sub-mitted on briefs without oral argument, is as to the legal validity of a resolution adopted by the Board of Education of the Township of Ewing, adjoining the City of Trenton, relating to the transportation to Trenton and return, of school children.  It appears that the public school facilities in the township do not extend beyond the eighth grade, and that pupils past that grade have customarily attended public schools in Trenton or Pennington, the township paying for the tuition, and also the cost of transportation advanced by parents or other relatives.  Previous to July 1st, 1941, all children so transported attended public high schools, and the township board contracted for their transportation pursuant to *R. S.* 18:14–8, the first paragraph of which provided that "whenever in any district there are children living remote from the school-house, the board of education of the district may make rules and contracts for the transportation of such children to and

from school." The original act seems to date from 1903 (acts of second special session, page 45). But in 1941 (*Pamph. L., p.* 581) the paragraph above quoted was amended and another paragraph added. In the first paragraph the words "the schoolhouse" are changed to read "any schoolhouse" and after the words "to and from school" the paragraph continues "including the transportation of school children to and from school other than a public school, except such school as is operated for profit in whole or in part." The additional paragraph reads: "When any school district provides any transportation for public school children to and from school, transportation from any point in such established school route to any other point in such established school route shall be supplied to school children residing in such school district in going to and from school other than a public school, except such school as is operated for profit in whole or in part."

The result, of course, is to provide for free transportation of children at the expense of the home municipality and of the state school fund to and from any school, other than a public school, which is not operated for profit; and accordingly, the resolution brought up by this writ provides for the transportation of school children of Ewing Township, not only to the Trenton and Pennington high schools, but to certain other designated schools in Trenton not operated for profit, but not connected with the public school system, "by way of public carriers as in recent years." It is stipulated that the township authorities pursuant to the resolution agreed to pay for the then current school year the cost of transportation to such non-public schools approximately $859.80 and actually did pay part thereof.

We conclude that the resolution under review must be set aside, on the fundamental ground that the amendment of 1941 is in violation of paragraph 6 of section 7 of article IV of the constitution, which reads: "The fund for the support of free schools, and all money, stock and other property, which may hereafter be appropriated for that purpose, or received into the treasury under the provision of any law heretofore passed to augment the said fund, shall be securely invested, and remain a perpetual fund; and the income

thereof, except so much as it may be judged expedient to apply to an increase of the capital, shall be annually appropriated to the support of public free schools, for the equal benefit of all the people of the state; and it shall not be competent for the legislature to borrow, appropriate or use the said fund, or any part thereof, for any other purpose, under any pretense whatever. * * *"

The facts are not in dispute. We are called upon to decide the purely legal question whether or not the township board of education in appropriating money for transportation of pupils to and from parochial schools in a neighboring city, i. e., other than public schools, contravened paragraph 6 quoted above.

There are two theories. A majority of the state courts have held such transportation unconstitutional. The leading case, supporting that theory, is the New York case of *Judd* v. *Board of Education,* 278 *N. Y.* 200; 15 *N. E. Rep.* (2d) 576; 118 *A. L. R.* 789. Typically illustrative of this theory are the following cases: *State, ex rel. Traub* v. *Brown (Del.),* 36 *Del.* 181; 172 *Atl. Rep.* 835; *Sherrard* v. *Jefferson County Board of Education (Ky.),* 294 *Ky.* 469; 171 *S. W. Rep.* (2d) 968; *Gurney* v. *Ferguson (Okla.),* 190 *Okla.* 254; 122 *Pac. Rep.* (2d) 1002; *Mitchell* v. *Consolidated School District No. 201 (Wash.),* 135 *Pac. Rep.* (2d) 79, and *State, ex rel. Van Straten* v. *Milquet (Wis.),* 180 *Wis.* 109; 192 *N. W. Rep.* 392.

The other theory (Child Benefit Theory) that such transportation is not unconstitutional was adopted by the court of Maryland (*Board of Education of Baltimore County* v. *Wheat,* 174 *Md.* 314; 199 *Atl. Rep.* 628); by Louisiana (*Borden* v. *Louisiana State Board of Education,* 168 *La.* 1005; 123 *So. Rep.* 665; 67 *A. L. R.* 1183, and *Cochran* v. *Louisiana State Board of Education,* 168 *La.* 1030; 123 *So. Rep.* 664); and by Mississippi (*Chance* v. *Mississippi,* 206 *So. Rep.* 706).

We are not required to make a choice between these two theories, as the matter is not one of first impression in this state. In the case of *Rutgers College* v. *Morgan,* 70 *N. J. L.* 460 (at *pp.* 474-475), it was held by this court, in an opinion

by Mr. Justice Van Syckel, that the constitutional provision (paragraph 20 of article I) and the provision relating to special laws "does not bar instrumentalities for public education provided by the state and under its control by general laws where the appropriation is made for such schools. They were designed as an insurmountable barrier to giving free state aid, and to donations to private or *sectarian* schools, and should be rigidly enforced; but they were not intended to narrow or circumscribe the legislative power to furnish facilities by general laws for public education under its own supervision." The decision was affirmed by the Court of Errors and Appeals in all essential features in 71 *Id.* 663. The same principle was applied by Vice-Chancellor Buchanan in *In re Voorhees*, 123 *N. J. Eq.* 142; 196 *Atl. Rep.* 365; affirmed by this court, 121 *N. J. L.* 594; 3 *Atl. Rep.* (*2d*) 891, and by the Court of Errors and Appeals, 124 *N. J. L.* 35; 10 *Atl. Rep.* (*2d*) 650.

The resolution under review will be set aside, with costs.

HEHER, J. (Dissenting.) I dissent, and vote to dismiss the writ of *certiorari*.

The statute provides for the transportation of children attending schools other than public schools, not operated for profit, on routes established for the conveyance of public school children. *Pamph. L.* 1941, *p.* 581; *N. J. S. A.* 18:14-8.

It is assailed, first, as in contravention of paragraphs 19 and 20 of Article I of the State Constitution. Paragraph 19 provides that "No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation;" and paragraph 20 directs that "No donation of land or appropriation of money shall be made by the state or any municipal corporation to or for the use of any society, association or corporation whatever."

Paragraph 19 is not in terms applicable to school districts. And I cannot accept the view that the mere transportation of pupils to private schools, over a route already established for the conveyance of public school children, constitutes a

gift, donation, or appropriation of money by the state or a municipal corporation "for the use" of a "society, association or corporation."

Of course, a gift of public funds or property to a private society, association, or corporation would be unconstitutional, whether made directly or indirectly. *Wilentz* v. *Hendrickson,* 133 *N. J. Eq.* 447; *affirmed,* 135 *Id.* 244. But this is not the case here. Such transportation is a service to the children and their parents rather than to the schools, for otherwise the parents would be obliged to provide the conveyance or incur the traffic hazards incident to the journey, for which children are generally so ill-equipped. It is in no real sense a contribution to "the use" or the maintenance of the institutions which the children attend. Here, the school district did not operate the transport. The challenged resolution provides for conveyance "by way of public carriers;" and the parents were reimbursed directly for the fares thus expended. And such provision is in the exercise of what I deem to be an unquestionable public function.

School attendance is compulsory. *R. S.* 18:14–14, *et seq.* Compulsory education is a prerogative of the state. The state may compel parents to perform the natural duty of education owed to their children, and aid them in so doing, except as restrained by constitutional limitations. But compulsory attendance at a public school, whether the compulsion be direct or indirect, would violate constitutional guaranties. *Pierce* v. *Society of Sisters of the Holy Names of Jesus and Mary,* 268 *U. S.* 510; 45 *S. Ct.* 571; 69 *L. Ed.* 1070. The statute under review facilitates the attendance at both classes of schools of children remotely situated, and thus contributes substantially to the effectuation of the statutory provisions for compulsory education, and at the same time considers the factor of safety—a reasonable measure to those ends. I am unable to perceive any intrusion upon these or any other constitutional limitations by the mere provision, under such conditions, of transportation to children attending non-public schools not operated for profit. The state recognizes the private school, as perforce it must, as a means of providing the minimum of education decreed by what is conceived to

be sound public policy; and I think the legislature possesses the incidental right of providing transportation to such schools of children residing at a distance, especially where it is confined to routes found necessary for the conveyance of public school children. I cannot find in any of our constitutional prohibitions a purpose to deny such transportation to children of non-profit private schools, seeking the education which satisfies the standard of the compulsory education law. If this transportation provision be viewed apart from the institutions themselves, and considered as an aid to parents in making educational facilities of their choice available to their children with a measure of safety, in the service of an essential public interest, it seems to me that constitutional doubts lose their force. As so viewed, the act is in aid of compulsory education, a primary concern of society. Education is a matter of "supreme importance, which should be diligently promoted." *Meyer* v. *Nebraska,* 262 *U. S.* 390; 43 *S. Ct.* 625; 67 *L. Ed.* 1042.

A like statute has recently received the approval of the Court of Appeals of Maryland. *Board of Education of Baltimore County* v. *Wheat,* 174 *Md.* 314; 199 *Atl. Rep.* 628. It was there held that "the accommodation of private school children is an incidental use of provision made for an unquestioned public purpose," and therefore the statute did not infringe the prohibition of the Declaration of Rights "against the use of funds for private purposes." Chief Judge Bond declared that whether such use is "private * * * appears to be, finally, a question whether it is in furtherance of a public function in seeing that all children attend some school, and in doing so have protection from traffic hazards." He continued: "Starting with the interest which the state is acknowledged to have in seeing that all children of school age acquire an education by attending some school, and the fact that they are complying with the law in going to such a school as the parochial school involved in this case, their accommodation in the buses appears to the court to be within the proper limits of enforcement of the duty imposed. Compliance having been made dangerous in a much greater degree, removal of the danger to any extent would seem to be within

the same public function. * * * This conclusion that the act must be regarded as one within the function of enforcing attendance at school, renders it unnecessary to consider separately the objection that a religious institution is aided. Article 36, Declaration of Rights. The institution must be considered as aided only incidentally, the aid only a byproduct of proper legislative action."

There is a conflict in the cases elsewhere that is in some instances more seeming than real. For example, in the case of *Judd* v. *Board of Education,* 278 *N. Y.* 200; 15 *N. E. Rep.* (*2d*) 576, cited in the majority opinion, the constitution contained a sweeping provision against the use, "directly or indirectly," by the state or any subdivision thereof, of public money "in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught." The majority classified the statute as bestowing an indirect benefit upon the institutions as such, on the theory that "Free transportation of pupils induces attendance at the school," and "The purpose of transportation is to promote the interests of the private school or religious or sectarian institution that controls and directs it." Chief Judge Crane, for the minority, considered the measure to be a proper complement to the compulsory education statute. He said: "The object of such legislation is apparently to insure the attendance of the children at their respective schools for the requisite period of instruction and, perhaps, to safeguard the health of the children. The statute is not designed to aid or maintain the institutions themselves. Recognizing the right of the children to be sent to such schools, and enjoining upon them the duty of regular attendance, the Legislature gave the authorities power, in a proper case, to assist the children in getting to their school. * * * There is no benefit to the schools except, perhaps, as one may conceive an accidental benefit in the sense that some parents might place their children in religious schools when they anticipate transportation provision, though they might hesitate to do so if the children were compelled to make their own way. The constitutional

provision is not designed to discourage or thwart the school where religious instruction is imparted. 'Denominational religion is merely put in its proper place outside of public aid or support.'"

The doctrine that provision of transportation aids the private non-profit school by inducing attendance of pupils was rejected, as unfounded in fact, by Mr. Justice Robinson and Mr. Justice Mallery in interesting and well reasoned dissents in the case of *Mitchell* v. *Consolidated School District No.* 201, 17 *Wash.* (2d) 61; 135 *Pac. Rep.* (2d) 79. It would seem that the statutory provision for the transportation of public school pupils was primarily designed to make such educational facilities available to pupils remotely situated from the seat of instruction, and thus to aid in the performance of the public educational function.

These considerations also dispose of the contention that the statute runs counter to paragraphs 3 and 4 of Article I of the State Constitution.

And I cannot agree that the act violates Article IV, section 7, paragraph 6, of the Constitution, safeguarding the "fund for the support of free schools."

The attack is upon the statute itself, not the use of public moneys as in contravention of this constitutional provision. The sole point made is that the act infringes the several cited constitutional limitations; and it is said, *arguendo,* that "part of the moneys used by school districts for transportation of pupils to private or sectarian schools can be traced to the school districts directly from the State school fund mentioned in the Constitution." There is no proof whatever that any part of the state school fund was so used here. The holding of the case of *Rutgers College* v. *Morgan,* 70 *N. J. L.* 460; *affirmed,* 71 *Id.* 663, is that this constitutional mandate has relation only to what may be done with the constituted school fund, not what may be done with the general funds of the State. The sole question raised here is the constitutional sufficiency of the statute.