[Civ. No. 3156. Fourth Dist. Mar. 26, 1946.]

VICTOR V. BOWKER, Appellant, v. G. M. BAKER et al., Respondents.

Alan H. Critcher for Appellant.

Walter C. Haight, District Attorney, Leroy McCormick, Assistant District Attorney, J. Thomas Crowe and McFadzean & Crowe for Respondents.

MARKS, J.—This is an appeal from a judgment which denied plaintiff an injunction by which he sought to restrain defendants from permitting pupils attending a parochial school from riding in buses owned and operated by the Porterville School District, and from an order made after judgment denying a motion to vacate the judgment and enter another judgment. Plaintiff also attempted to appeal from the order denying his motion for new trial which is not appealable. (Code Civ. Proc., § 963.)

Plaintiff, with G. M. Baker and Boyd B. Kreider, composed the board of trustees of the Porterville School District. Emmett R. Berry was its superintendent of schools.

At a meeting of the trustees of the district, held on September 21, 1943, by a vote of two "Yes" and one "No," plaintiff voting in the negative, the following resolution was passed:

"That transporation be allowed private and parochial school students in the District's public school buses on the basis of the following provisions:

"1. That there shall be no increase in the number of students eligible to ride in the District's buses above the number eligible for riding that were enrolled in the private and paro-

chial schools on Tuesday, September 21, 1943. This to be the maximum number to be given transportation for the Year 1943 to 1944.

"2. That this permission be allowed only in accordance with the District's transporation rules and regulations governing the transporation of public school children.

"3. That the parochial and private schools be notified that the permission for the Year 1943 to 1944 is granted only as a measure to relieve the present war emergency situation and the home defense program."

On January 10, 1944, plaintiff filed this action. He alleged that pursuant to the resolution, pupils of a parochial school operated by the Roman Catholic Church were riding on public school buses, and sought to enjoin this practice.

The foregoing resolution was passed under the authority granted by section 16257 of the Education Code which provides as follows:

"The governing board of any school district may allow pupils entitled to attend the school of the district, but in attendance at a school other than a public school, under the provisions of Section 16624, transportation upon the same terms and in the same manner and over the same routes of travel as is permitted pupils attending the district school.

"The allowance of this section shall be restricted to actual transportation when furnished by the district to children attending the district school, and nothing in this section shall be construed to authorize or permit in lieu of transportation payments of money to parents or guardians of children attending private schools."

In the trial court counsel agreed that the sole issue to be presented and decided was the constitutionality of section 16257 of the Education Code and that they hoped no other question would be considered, argued or decided. No other question is presented here and we will confine ourselves to this one unless it becomes necessary to consider the bearing on the case of the fact that the resolution was a temporary measure intended to relieve the shortage of transportation during the war emergency. Many acts that could not be countenanced in periods of peace and tranquility become legal and are permitted during emergencies as aiding the war effort and the defense of the nation.

The facts of this case are simple and are not in dispute. The Porterville School District is a school district of the

county of Tulare, organized under the laws of the state. It owns and operates school buses to transport pupils to and from its schools over regularly established routes.

St. Anne's Parochial School is a private school operated by the Roman Catholic Church. Its school was located about one block from the district school that served as the inner terminus of the school bus routes. St. Anne's Parochial School maintained educational standards equal to those of the public school and met the requirements of section 16624 of the Education Code. In addition to the subjects usually taught in public schools it instructed in the religious beliefs of the church. Pupils were not compelled to take this instruction and about 40 per cent of them did not receive it.

The school buses on two routes did not have sufficient public school passengers to fill the seats. Under authority of the Education Code and the resolution of the board of trustees of the school district, pupils of the Catholic school were permitted to fill these vacant seats and ride with the public school students. The routes of the buses were neither changed nor extended to accommodate the private school pupils and no additional stops were made for them. A maximum of seventeen private school pupils were transported on the two buses. Their ages ranged from five to twelve years, both inclusive, and the distances from their homes to the public school ranged from two to eight miles, both inclusive. When the seats in the buses were filled no other private school pupils were permitted to ride. The evidence discloses that seven parochial school pupils applied for transportation, which was refused because the seats on the buses were filled. The principal of St. Anne's School testified he had endeavored to purchase buses for the school but was unable to do so because of war shortages.

The evidence further discloses that in the school year 1942-1943 the average transportation cost per mile was 2.9 cents for each pupil; that during the month of January, 1944, there were twelve private school pupils transported a total distance of fifty-eight miles per day at an average cost of $1.68 per day. This average cost per day is based on the total cost of operation of the buses, including depreciation and the total number of passengers carried. Of course there would have been the same depreciation, the same wages of the operators, and the same distances traveled had there been no private school passengers. The only actual cost to the district of

transportation was the small additional cost caused by the added weight in the buses. It is obvious that this could amount to only a very small fractional part of the $1.68 per day which was figured as the average daily cost of transporting the twelve private school pupils with the public school pupils in January, 1944. This actual added cost to the school district was not computed and probably could not have been computed from the available records, but that there must have been some slight added cost is obvious. This case seems to be one where a principle is involved rather than the small amount expended by the district, so we will consider the principle, admitting that the transportation of the private school pupils cost the district something.

Before proceeding to a consideration of the question of law involved, we should observe that it is the act of the Legislature that is under attack here; that this act permitted the public transportation of pupils attending Catholic schools as well as pupils attending any private school who could qualify under its terms. Thus the fact that transportation was furnished only to pupils attending a Roman Catholic school is an unimportant incident of this case and can have no bearing on its decision, which would have to be the same if the school were operated by one of the Protestant denominations. Our reference to St. Anne's Parochial School as a Roman Catholic school is required because of the necessity for exactness in description under the evidence before us and should not arouse any historical or ancient prejudice in favor of or against the legislative enactment.

Plaintiff maintains that section 16257 of the Education Code is violative of several sections of the state Constitution and therefore an unconstitutional enactment. ■■ Our duty in determining the constitutionality of a legislative enactment is clearly set forth in *People* v. *Standard Accident Ins. Co.*, 42 Cal.App.2d 409 [108 P.2d 923], as follows:

"And in considering the constitutionality of the statute the question presented is not whether it is possible to condemn it, but whether it is possible to uphold it. It is not to be declared invalid, because, incidental to the main purpose, there results an advantage to individuals. (*Patrick* v. *Riley,* 209 Cal. 350 [287 P. 455].) The legislature is vested with a large discretion in determining what is for the public good and what are public purposes for which public moneys can be rightfully expended and that discretion cannot be con-

trolled by the courts, except when its action is clearly evasive. (*Daggett* v. *Colgan*, 92 Cal. 53 [28 P. 51, 27 Am.St.Rep. 95, 14 L.R.A. 474].)''

Plaintiff maintains that the section violates section 30 of article IV and sections 8 and 4 of article IX of the state Constitution. The question is of first impression in California on the precise facts before us. There are numerous decisions on similar questions from other states, and it is interesting to note that there are strong dissenting opinions in the majority of them indicating, generally speaking, that the question is a close one upon which reasonable and able minds have disagreed.

Article IV of the Constitution deals with the legislative department of the state. Section 30 of that article provides in part as follows:

''Neither the Legislature, nor any county, city and county, township, school district, or other municipal corporation, shall ever make an appropriation, or pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed, or sectarian purpose, or help to support or sustain any school, college, university, hospital, or other institution controlled by any religious creed, church, or sectarian denomination whatever; . . .''

Article IX of the Constitution deals with education. Section 8 of that article provides in part as follows:

''No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools; . . .''

It is unnecessary to quote section 4 of article IX because it deals with funds derived from special sources which are declared to constitute and must ''remain a perpetual fund'' which ''shall be inviolably appropriated to the support of common schools throughout the State.'' There is no indication in the record that any of the funds used by the Porterville School District to pay for operation of its buses came from this ''perpetual fund'' so the provisions of that section are not applicable here.

Defendants call attention to section 1 of article IX of the Constitution which provides as follows:

''A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means

the promotion of intellectual, scientific, moral, and agricultural improvement.''

Plaintiff cites and relies upon the cases of *State* v. *Milquet,* 180 Wis. 109 [192 N.W. 392]; *State* v. *Brown,* 36 Del. 181 [172 A. 835]; *Judd* v. *Board of Education,* 278 N.Y. 200 [15 N.E.2d 576, 118 A.L.R. 789]; *Gurney* v. *Ferguson,* 190 Okla. 254 [122 P.2d 1002]; *Sherrard* v. *Jefferson County Board of Education,* 294 Ky. 469 [171 S.W.2d 963]; *Mitchell* v. *Consolidated School District,* 17 Wn.2d 61 [135 P.2d 79, 146 A.L.R. 612]; *Everson* v. *Board of Education,* 132 N.J.L. 98 [39 A.2d 75]; *Nevada* v. *Hallock,* 16 Nev. 373; *Jenkins* v. *Andover,* 103 Mass. 94, and *Synod of Dakota* v. *State of South Dakota,* 2 S.D. 366 [50 N.W. 632, 14 L.R.A. 418].

The foregoing cases announce what we may term the strict rule in the United States. However, New Jersey in the case of *Everson* v. *Board of Education,* 133 N.J.L. 350 [44 A.2d 333], and Kentucky in *Nichols* v. *Henry,* 301 Ky. 434 [191 S.W.2d 930], reversed their former positions taken in *Everson* v. *Board of Education,* 132 N.J.L. 98 [59 A.2d 75], and *Sherrard* v. *Jefferson County Board of Education,* 294 Ky. 469 [171 S.W.2d 963]. The facts in some of the other cases cited are so different from those in the instant case that they furnish no direct authority here. *Nevada* v. *Hallock, supra,* involved a direct appropriation of money which the legislature attempted to make to a Catholic orphanage. *Jenkins* v. *Andover, supra,* involved a gift of public money to rebuild a private school that had been destroyed by fire. *Synod of Dakota* v. *State of South Dakota, supra,* involved an attempt by the state to pay the tuition of students in a private Presbyterian university.

In *Mitchell* v. *Consolidated School District, supra,* the Supreme Court of Washington remarked that carrying out the mandate of the Legislature to furnish transportation to pupils attending private schools would require the direct expenditure of considerable amounts of money to purchase additional buses. The Judd case involved the direct expenditure of school funds and the Constitution of New York prohibited direct and *indirect* aid to denominational schools, which prohibition does not appear in the California Constitution.

Counsel for defendants attempt to distinguish the cases from sister states relied upon by plaintiff, on the grounds of the different provisions of their Constitutions and statutes from those of California. While some differences exist, for

the purpose of this opinion, we prefer to regard some of those cases as supporting the arguments of plaintiff.

Generally, the reasoning running through those cases in point is similar and is stated by the Court of Appeals of New York in *Judd* v. *Board of Education, supra,* as follows:

"The argument is advanced that furnishing transportation to the pupils of private or parochial schools is not in aid or support of the schools within the spirit or meaning of our organic law but, rather, is in aid of their pupils. That argument is utterly without substance. It not only ignores the spirit, purpose and intent of the constitutional provisions but, as well, their exact wording. The object of construction as applied to a written constitution is to give effect to the intent of the people in adopting it, and this intent is to be found in the instrument itself unless the words or expressions are ambiguous. (Cooley's Constitutional Limitations, 8th Ed., pp. 124-126.) There is nothing ambiguous here. The wording of the mandate is broad. Aid or support to the school 'directly or indirectly' is proscribed. The two words must have been used with some definite intent and purpose; otherwise why were they used at all? Aid furnished 'directly' would be that furnished in a direct line, both literally and figuratively, to the school itself, unmistakably earmarked, and without circumlocution or ambiguity. Aid furnished 'indirectly' clearly embraces any contribution, to whomsoever made, circuitously, collaterally, disguised, or otherwise not in a straight, open and direct course for the open and avowed aid of the school, that may be to the benefit of the institution or promotional of its interests and purposes. How could the people have expressed their purpose in the fundamental law in more apt, simple and all-embracing language? Free transportation of pupils induces attendance at the school. The purpose of the transportation is to promote the interests of the private school or religious or sectarian institution that controls and directs it. 'It helps build up, strengthen and make successful the schools as organizations.' *State ex rel. Traub* v. *Brown,* 6 W. W. Harr, 36 Del. 181, 172 A. 835, 837, writ of error dismissed Feb. 15, 1938, Del. Sup. 197 A. 478. Without pupils there could be no school. It is illogical to say that the furnishing of transportation is not an aid to the institution while the employment of teachers and furnishing of books, accommodations and other facilities are such an aid. In the instant case, $3,350 was appropriated out of public

moneys solely for the transportation of the relatively few pupils attending the specific school in question. If the cardinal rule that written constitutions are to receive uniform and unvarying interpretation and practical construction is to be followed, in view of interpretation in analogous cases it cannot successfully be maintained that the furnishing of transportation to the private or parochial school out of public money is not in aid or support of the school.''

Defendants cite numerous cases from other jurisdictions. Some of them are directly in point, others are closely analogous, while others seem rather unimportant. Because we believe the issues before us are settled by California cases, we will cite those other cases relied upon, with only brief comment. *Board of Education* v. *Wheat,* 174 Md. 314 [199 A. 628]; *Adams* v *County Commissioners,* 180 Md. 550 [26 A.2d 377]; *Everson* v. *Board of Education,* 133 N.J.L. 350 [44 A.2d 333]; *Nichols* v. *Henry,* 301 Ky. 434 [191 S.W.2d 930]; *Borden* v. *Louisiana State Board of Education,* 168 La. 1005 [123 So. 655, 67 A.L.R. 1183]; *Cochran* v. *Louisiana State Board of Education,* 168 La. 1030 [123 So. 664]; *Cochran* v. *Louisiana State Board of Education,* 281 U.S. 370 [50 S.Ct. 335, 74 L.Ed. 913]; *Chance* v. *Mississippi etc. Board,* 190 Miss. 453 [200 So. 706]; *Gerhardt* v. *Heid,* 66 N.Dak 444 [267 N.W. 127]; *State* v. *Johnson,* 170 Wis. 251 [176 N.W. 224]; *Nichols* v. *School Directors,* 93 Ill. 61 [34 Am.Rep. 160], and *Cost* v. *Shinault,* 113 Ark. 19 [166 S.W. 740, Ann. Cas. 1916C 483].

The general line of reasoning running through those cases which uphold the right of the school district to provide free transportation for school children finds its starting point in the undoubted police power of the state to promote the public welfare by aiding in practical ways the education of the young. It is generally held that the direct benefit conferred is to the children with only an incidental and immaterial benefit to the private schools; that this indirect benefit is not an appropriation of public moneys for private purposes and does not violate any constitutional provisions against giving state aid to denominational schools.

We find this comment in 51 Harvard Law Review at page 935:

''This strict rule reflects the court's insistence that the states maintain nonsectarian schools rather than delegate their educational responsibilities to subsidized private and

parochial schools. Despite these arguments the fact that the highways are extremely dangerous, especially to children, should be sufficient to induce a court to hold that an effort by the state to protect all children is a valid exercise of police power. If this is the purpose of the statute providing free transportation, the children may well be considered its true beneficiaries, and any advantage received by the private and parochial schools incidental and immaterial.''

In *Cochran* v. *Louisiana State Board of Education, supra,* the Supreme Court of the United States said:

''Viewing the statute as having the effect thus attributed to it, we cannot doubt that the taxing power of the state is exerted for a public purpose. The legislation does not segregate private schools, or their pupils, as its beneficiaries or attempt to interfere with any matters of exclusively private concern. Its interest is education, broadly; its method, comprehensive. Individual interests are aided only as the common interest is safeguarded.''

It has been the practice in many primary and secondary school districts in California to furnish free transportation as public expense to pupils attending public schools. This is expressly authorized by statute. (Ed Code, §§ 16251 et seq.) It has been held that this does not amount to a gift of public funds but serves a public purpose. (*Pasadena City H. S. Dist.* v. *Upjohn,* 206 Cal. 775 [276 P. 341, 63 A.L.R. 408].) It has also been held that an appropriation for a public purpose is not a gift of public funds. (*San Diego County* v. *Hammond,* 6 Cal.2d 709 [59 P.2d 478, 105 A.L.R. 1155].)

In 1917 the Legislature amended section 1613 of the Political Code and provided that school houses might be used by the public as civic centers in which community meetings could be held. (Stats. 1917, p. 741.) This enactment has now been amplified and further codified into division 9, chapter 9 of the Education Code. This use of school houses and grounds is given free (Ed. Code, § 19437) except under certain circumstances, and the cost of lighting, heating, janitor service and other necessary expenses of such use is paid out of the school funds. (Ed. Code, § 19439.) Of course this use of the school house as a civic center by the public entails the expenditure of school funds for purposes other than those directly connected with the education of children and diverts public money raised for the support of the schools to other uses. Nevertheless the school house civic center law has

been upheld. (*Ellis* v. *Board of Education,* 27 Cal.2d 322 [164 P.2d 1]; *Goodman* v. *Board of Education,* 48 Cal.App. 2d 731 [120 P.2d 665].)

In the Goodman case it was said:

"The objection with relation to the diversion of funds is answered by the following: 'Except in a few of the so-called extreme cases which deny the power to permit other uses of school property, the second objection [as to the diversion of moneys raised by taxation for a specified purpose, and that such moneys may not be used for private purposes] is given little consideration as being conclusive of the illegality of the use, on the theory that, where the primary purpose to be subserved is legitimate, the expenditure of moneys secured through taxation is legal notwithstanding incidental uses are made thereof for otherwise authorized purposes. Consequently the wording and import of the statutes prescribing the powers and duties of those charged with the care of school property is to a large extent determinative of whether the particular use in question will be allowed.' (86 A.L.R., p. 1195.)"

While these cases do not directly touch on the main question before us they do support the theory that where the main purpose of an enactment is lawful, and an incidental or immaterial benefit results to some person or organization, which benefit is not directly permitted by law, this incidental benefit alone will not defeat the legislation, its main purpose being lawful.

Raising the standard of intelligence of youth and providing for the safety of children are legitimate objects of government and are authorized under the police powers.

It is also true that the transportation of pupils to and from public schools is one of the legitimate methods adopted to help promote education and safeguard children. If the transportation of pupils to and from public schools is authorized, as it certainly is, and if the benefit from that transportation is to the pupils, then an incidental benefit flowing to a denominational school from free transportation of its pupils should not be sufficient to deprive the Legislature of the power to authorize a school district to transport such pupils.

In 1921 the Legislature passed the Veterans' Educational Act. (Stats. 1921, p. 967; Deering's Gen. Laws, 1931, Act 7746.) This act provided, among other things, for the organi-

zation of the California Veterans Educational Institute to supervise and continue the education of those qualified veterans of World War I who might place themselves under its jurisdiction. The veteran might choose any educational institution in the state in which to enroll, subject to the provision "that private tuition schools shall be chosen only when suitable opportunity is not available in public or semi-public institutions." Among the benefits the veterans would receive from the state was "payment of transportation charges once each year from the home of the student to and from the institution of learning."

The constitutionality of this act was upheld in the case of *Veterans' Welfare Board* v. *Riley,* 189 Cal. 159 [208 P. 678, 22 A.L.R. 153]. (See, also, *University of Southern California* v. *Robbins,* 1 Cal.App.2d 523 [37 P.2d 163]; *Robbins* v. *University of Southern California,* 295 U.S. 738 [55 S.Ct. 650, 79 L.Ed. 1685]; *Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 P. 209, 30 A.L.R. 1029]; *City and County of San Francisco* v. *Collins,* 216 Cal. 187 [13 P.2d 912].)

In *University of Southern California* v. *Robbins, supra,* it was said:

" 'If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court.' (*In re Madera Irr. Dist.,* 92 Cal. 296 [28 P. 272, 27 Am.St.Rep. 106, 14 L.R.A. 755]; *Walker* v. *Shasta Power Co.,* 160 F. 856 [19 L.R.A. (N.S.) 725, 87 C.C.A. 660].). . . .

"The framers of our state Constitution gave recognition to the high importance of education for a self-governing people and solemnly enjoined our lawmakers in the following language: 'A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement.' (Art. IX, sec. 1.) The legislature, mindful of this duty, has enacted from time to time laws appropriately designed to make effectual this ideal, including the code section under which this action is brought. In doing so it has properly assumed the power vested in it as a body composed of duly elected representatives of the citizens of this state, and has exercised a discretion which is a reasonable concomitant to the responsibility imposed upon it by the Con-

stitution. The legal philosophy of our state with reference to education is discussed in *Veterans' Welfare Board* v. *Riley*, 189 Cal. 159 [208 P. 678, 22 A.L.R. 1531]. In that case the validity of an act which provided educational aid to veterans was upheld, and the legislature's right to devote taxpayers' money to this useful purpose was confirmed. The law had been assailed on the theory that such aid amounted to a gift of public funds and was therefore unconstitutional. The court said: 'Bearing in mind that the burden is primarily upon the state legislature to determine whether or not the purpose served is a public purpose, and whether or not the development of the state requires the extension of educational facilities and the giving of additional opportunities to different types of students, it may safely be said that the question is one for the legislature and that the broad general restrictions upon the state legislature prohibiting gifts should not be held to prevent reasonable allowances made to enable students to secure the advantages of educational institutions.' "

We may take judicial notice that there are numerous denominational schools, colleges and universities in this state. If the direct payment by the state of the transportation costs of the veteran between his home and such an institution of learning, as well as to publicly maintained schools and colleges, is not a violation of the constitutional provisions, then certainly permitting a little child to occupy a vacant seat in a school bus in order that he might attend a denominational school cannot be held to be such a violation.

It is true that the sections of the Constitution we are concerned with here were not cited in *Veterans', Welfare Board* v. *Riley, supra,* in either the main or dissenting opinions. Eminent counsel represented the parties in that case, and those counsel as well as the learned members of the Supreme Court must have been familiar with the entire Constitution. The fact that the sections here involved were not considered, especially by the dissenter, would indicate that they were considered no bar to the Veterans' Educational Act, rather than that they were overlooked in a case of such importance.

The evidence in this case shows that the parochial school children had to cross railroad tracks and travel on busy highways in going to and returning from school. The promotion of the safety of the children of the state is an important function of government, just as much so as their education. It is a well recognized function under the police powers.

This is one of the reasons why the system of transportation of children to and from public schools was authorized and has been regarded lawful.

The resolution of the board of trustees of the district pertains to transportation of pupils during the school year of 1943-1944 and recites that it was passed as a war emergency measure. We are not informed whether the transportation of the pupils was continued after the year specified but assume that it was. The principal of the parochial school testified that he had attempted to buy buses for the use of the school but was unable to do so. All of this would indicate that the use of the vacant seats on the school buses by the parochial school pupils may be of short duration. Also other acts of the Legislature have authorized the use of the school buses in other than strictly school functions. We have found no case in which these laws have been challenged.

When we consider the complexities of our modern life we realize that many expenditures of public money give indirect and incidental benefit to denominational schools and institutions of higher learning. Sidewalks, streets, roads, highways, sewers are furnished for the use of all citizens regardless of religious belief. No one has yet challenged the right of any law abiding citizen to travel to a school over a highway built with public funds because of his religious beliefs or because he is attending a denominational institution, yet to paraphrase the expression used in *Judd* v. *Board of Education, supra,* without roads over which pupils could reach the school there would be no school. Police and fire departments give the same protection to denominational institutions that they give to privately owned property and their expenses are paid from public funds. If St. Anne's Parochial School caught fire would the plaintiff argue that the Porterville fire department responding to the call should stand by idle until the flames spread to privately owned buildings before attempting to extinguish the conflagration because the cost of the fire-fighting equipment and the salaries of the firemen are paid by funds raised by general taxation?

In view of the broad police powers of the state to promote the educational welfare and safety of its citizens, including little children, of the broad mandate to the Legislature found in section 1, article IX of the Constitution, of the fact that the direct benefit of the legislation authorizing the transportation of pupils attending private schools flows

to the children in providing for their safety and promoting their education, with only an indirect benefit to the private parochial school, and in view of the rule that requires us to resolve any doubt in favor of the constitutionality of a challenged act of the Legislature, we conclude that the legislation is constitutional and is not subject to the attack made here.

The attempted appeal from the order denying the motion for new trial is dismissed. The judgment and order appealed from are affirmed.

Barnard, P. J., and Griffin, J., concurred.