[Civ. No. 17100. Third Dist. Apr. 10, 1978.]

BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR
UNIVERSITY, Petitioner, v.
KENNETH CORY, as State Controller, et al.,
Respondents.

**COUNSEL**

McCutchen, Doyle, Brown & Enersen, David M. Heilbron, Samuel D. Hinkle IV and John Schwartz for Petitioner.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Clayton P. Roche and Charlton G. Holland, Deputy Attorneys General, for Respondents.

**OPINION**

**REGAN, J.**—Petitioner, Board of Trustees of the Leland Stanford Junior University (Stanford), seeks a peremptory writ of mandate to compel respondents, State Controller and State Treasurer, to pay petitioner's claim for state funds pursuant to former Education Code sections 31285.1 to 31285.4, now sections 69790 to 69793.

Section 69790 is a declaration by the Legislature that the furtherance of a greater supply of competent physicians and surgeons is a public purpose of great importance to provide needed medical services to the people of California; that some institutions of higher education in this state offering a doctor of medicine degree have available facilities and personnel capable of increasing enrollment at a lower cost than required to accomplish the same end by the establishment of new medical schools; that it is to the benefit of the state to increase the number of competent physicians and surgeons graduated by its colleges and universities. Section 69792 creates a medical contract program for study leading to a medical degree.

A Student Aid Commission (Ed. Code, § 69515) is authorized by section 69793 to contract on behalf of the state with private colleges and universities maintaining medical schools, and to authorize annual payments to them of $12,000 for each medical student enrolled in the program.

Under a document headed "Standard Agreement" executed in 1973 between the commission and Stanford, the university agreed "to use its best efforts to increase enrollment of full-time students in its School of Medicine for its 1973-74 through 1977-78 academic years compared to the enrollment for the University's 1970-71 academic year." Enrollment increases from 22 to 50 students were projected for the years 1973-1974 to 1977-1978, respectively. The state agreed to pay the university $12,000 annually for each additional student, not to exceed the scheduled number and minus certain federal funds which could be forthcoming under the federal Comprehensive Health Manpower Training Act of 1971.

Petitioner increased its medical school enrollment by 35 students over the base period in 1973-1974 and its claim in the amount of $228,580 was approved by the commission and paid by the Controller and Treasurer out of state funds. In like manner petitioner's claim for the 1974-1975 academic year was paid, in the amount of $267,280. However, petitioner's claim for the 1975-1976 academic year in the amount of $448,800 for an increase of 44 students over the base period, although approved by the commission, was thwarted by the respondent Controller, who refused to issue his warrant for the respondent Treasurer to pay. Petitioner has duly filed a claim with the State Board of Control which has been refused.

Respondents contend that payment would violate article IX, section 8, of the California Constitution, which reads as follows: "No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State."

The concern of respondents over legality of the claim is well founded. We have concluded that Education Code sections 69790 to 69793, inclusive, are unconstitutional insofar as they provide for expenditures of state funds for the support of sectarian or denominational schools, or private schools not under the exclusive control of officers of the public schools. Stanford is a private school not under the exclusive control of officers of the public schools and public funds appropriated to pay the claim in question would be invalidly appropriated and payment of such by respondents would be unlawful.

The Legislature has tried to do indirectly what it is prohibited by the Constitution from doing directly. The statute authorizes a conditional grant to petitioner (not to the individual medical students). Petitioner would have us look upon the statute as providing merely "incidental benefits" to petitioner as a private university by means of a bona fide contract for services rendered for a legitimate public purpose. Even though we may approve the legislative motive and purpose behind the statute, we must view it in the light of the prohibitory language of the Constitution.

The language of article IX, section 8, has remained unchanged since its proposal in the constitutional convention of 1878-1879 and its adoption by the People on May 7, 1879. It was approved at the convention without significant debate and the reports of the proceedings furnish no solace to petitioner. (See 3 Debates and Proceedings of the Constitutional Convention of the State of Cal. (1881).) From the beginning, the proposed language prohibited state monetary support not only of any sectarian or denominational school, but also of any school not under the exclusive control of officers of the public schools. Early language proposed the phrase "not under the direct and entire control" of public school officers, and the change to the present language "not under the exclusive control of the officers" is of little significance. The delegates were seriously concerned with assuring that public funds should only be used for support of the public school system they were creating in article IX of the Constitution. Thus, in another context a delegate expressed concern about any "opposition system of schools against the common schools of the State . . . ." (*Op. cit. supra,* at p. 1261.)

We turn now to the case law relating to article IX, section 8. In *Aid Society* v. *Reis* (1887) 71 Cal. 627, 632 [12 P. 796], it was held that the provision of funds by the City and County of San Francisco to help support privately run societies for maintenance and care of delinquent children did not violate the constitutional provision in question, since the societies were not organized for the sole purpose of disseminating knowledge and imparting scholastic instruction.

In 1947, it was held that article IX, section 8, was not involved in a program to release public school children to attend religious services or instruction since no public funds were involved. (*Gordon* v. *Board of Education* (1947) 78 Cal.App.2d 464, 476 [178 P.2d 488].)

In *Bowker* v. *Baker* (1946) 73 Cal.App.2d 653 [167 P.2d 256], public school buses were used to transport children to a parochial school. The court stated (at p. 663) that, "If the transportation of pupils to and from public schools is authorized, as it certainly is, and if the benefit from that transportation is to the pupils, then an *incidental* benefit flowing to a denominational school from free transportation of its pupils should not be sufficient to deprive the Legislature of the power to authorize a school district to transport such pupils." (Italics added.) The court went on to point out that no constitutional provisions were violated, including article IX, section 8, as the "direct benefit" was to the children in transporting them to school with only an "indirect benefit" to the private school. (*Id.,* at p. 667.) Thus was born the "incidental" or "indirect" benefit doctrine in relation to article IX, section 8. The court found support for this theory in the earlier case of *Veterans' Welfare Board* v. *Riley* (1922) 189 Cal. 159 [208 P. 678, 22 A.L.R. 1531], in which the Supreme Court, without mentioning article IX, section 8, upheld legislation providing for the payment to returning veterans of sufficient funds to pay their tuition at any school of their choice, including a private school. The constitutional challenge had been principally on grounds of unlawful gifts of public funds. (*Id.,* at p. 161.) ██ It is now accepted law under *Bowker* that a payment of funds in the amount of the tuition for education *directly* to a student or to a public or private school on behalf of a special student, such as a veteran, who designates the school of his choice, is not unconstitutional, since any benefit to a private school is an "incidental" or "indirect" effect of the direct benefit to the *student.*

██ ██ In the case now before us, the Legislature chose not to follow the path approved by the *Bowker* and *Veterans'* cases, but rather to pay an annual amount ($12,000) directly to Stanford University which it has not been shown has any relation to or connection with the tuition charged to each student for which the $12,000 is paid. The money is not made available by the Legislature to any special group, such as veterans, nor is it made available directly or indirectly as tuition for whatever school, public or private a recipient might choose to attend.

The form of the "standard agreement," characterized by Stanford as a contract, does not aid petitioner. The document includes language stating in effect that the consideration for the payment of state money is the increased enrollment of students because facilities are made available for additional students. The agreement expressly states that the payment of state funds to the university is in consideration of such

increased enrollment "and not as a grant." The reason for this inclusion, which is in no way controlling as to the question whether the *legislation* is in fact a grant, may have been the result of an overabundance of caution generated by the fact that the legal adviser for the Legislature had repeatedly opined prior to enactment that legislation of this type amounted to a grant to private colleges in violation of article IX, section 8, of the California Constitution. (See, The Challenge of Achievement, Rep. on Public and Private Higher Education in Cal. Joint Com. on Higher Education, Cal. Legislature, p. 149, contained in Supp. to Appen. to Assem. J. (1969 Reg. Sess.); State Aid to Private Medical Schools, 21 Assem. Interim Com. Rep. No. 20, Ways and Means (1965-1967) p. 16, contained in 2 Appen. to Assem. J. (1967 Reg. Sess.).)

The last case in the appellate courts of the state to discuss article IX, section 8, is *California Educational Facilities Authority* v. *Priest* (1974) 12 Cal.3d 593 [116 Cal.Rptr. 361, 526 P.2d 513]. It furnishes another example of the now well-developed rule that "incidental" benefits to a private school are permitted from state funds. There the use of proceeds of bonds issued by an authority created by the Legislature for the purpose of capital improvements on private campuses was held not violative of article IX, section 8, since public moneys were not liable for payment on the bonds and the only benefits to the schools were incidental, consisting of a reduced interest rate due to tax exemptions provided by general laws relating to public bonds (*id.,* at pp. 603-604) and the part-time efforts of state officials who served as directors of the agency. (*Id.,* at p. 604.)

Petitioner contends that as long as the payments are for a public purpose, paid to it pursuant to a "contract" to educate students, the prohibition in article IX, section 8, cannot be violated. While it is true the education of the citizens of the state is unquestionably a public purpose (see Cal. Const., art. IX, § 1) article IX, section 8, quite clearly mandates that public funds must go to public, not private, schools to accomplish that purpose.

We hasten to add the state can constitutionally enter into a variety of contracts with petitioner. The *Bowker* and *Veterans' Board* decisions make it clear petitioner can "incidentally" be benefited by the payment of public funds to students. However, for the stated reasons, a subsidy to petitioner pursuant to the state medical contract program to educate

medical students cannot be properly characterized as an "incidental" benefit.

The cases relied upon by petitioner do not lead to a contrary conclusion. *People* v. *City of Long Beach* (1959) 51 Cal.2d 875 [338 P.2d 177], and *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834 [108 Cal.Rptr.' 415], did not involve article IX, section 8. Moreover, in the *Long Beach* decision, the Supreme Court noted no appropriation was involved, only the use by the Y.M.C.A. of the public building. The *Winkelman* case involved the use of public real property by a private developer for a consideration alleged to be inadequate. Neither case is apposite.

None of the opinions of the California Attorney General is pertinent. One is remotely relevant. (28 Ops.Cal.Atty.Gen. 91 (1975).) The Attorney General concluded there that the loan of state textbooks to private schools constituted only an "incidental" benefit to the schools themselves where the purpose of such loan was to cause students in teacher training courses to become accustomed to the use of state textbooks.

■ Finally, petitioner points out other programs wherein the state or school districts are authorized by statute to contract with private entities for educational services.[1] From the fact that no state fiscal officer has challenged the legality of these programs, petitioner reasons the program before us is constitutional. This reasoning is difficult to follow. The judiciary, not the Legislature nor a state administrative officer, determines the constitutionality of a particular program.

The writ is denied and the order to show cause is discharged.

Puglia, P. J., and Paras, J., concurred.

A petition for a rehearing was denied May 2, 1978, and petitioner's application for a hearing by the Supreme Court was denied June 27, 1978. Manuel, J., did not participate therein. Caldecott, J.,* participated therein. Tobriner, J., Richardson, J., and Newman, J., were of the opinion that the application should be granted.:

---

[1]See, e.g., Education Code, sections 8092, 35300 and 72620, 51790 et seq. and 78270 et seq., 52530 and 78430, 52570 et seq. and 78440 et seq., 54422, 54686, 56072 and 78842, 78012.

*Assigned by the Chairperson of the Judicial Council.