[Civ. No. 58245. Second Dist., Div. One. Aug. 27, 1980.]

CALIFORNIA TEACHERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
BOARD OF EDUCATION OF THE GLENDALE UNIFIED
SCHOOL DISTRICT et al., Defendants and Respondents.

COUNSEL

Raymond L. Hansen, Charles R. Gustafson and A. Eugene Huguenin, Jr., for Plaintiffs and Appellants.

John H. Larson, County Counsel, Donovan M. Main, Deputy County Counsel, Charles S. Doskow and Jonathan Van Patten for Defendants and Respondents.

OPINION

TITLE, J.*—Appellants appeal from a judgment denying their petition for writ of mandate and application for injunctive relief in their action against the Glendale Unified School District (the district) in which they sought to have the district cease supporting a tuition-charging summer school and to have the district establish a free summer school program as a part of the entire education program of the district.

The complaint filed in the action states four causes of action, all bottomed on the same facts concerning the summer school program conducted at certain school sites in the district. The first cause of action sought injunctive relief, alleging that appellant students of the district have been deprived of their statutory and constitutional rights to a free district-operated summer school; the second cause of action sought a writ of mandate to compel the district to conduct a free summer school, based generally on the same factual allegations; the third cause of action is again based upon the same allegations of fact, and seeks the issuance of a writ of mandate commanding defendants to operate the

*Assigned by the Chairperson of the Judicial Council.

summer school on the ground that the agreement hereafter mentioned between the district and respondent La Verne University (La Verne) constitutes a breach of the collective bargaining agreement between the district and appellant teachers' associations (the association); the fourth cause of action is for declaratory relief based upon the same factual allegations set forth in the prior causes of action.

At the time of the filing of the complaint appellants moved for a preliminary injunction and a peremptory writ of mandate, which motion was heard and denied, the denial being reflected in said judgment. This appeal followed.

## FACTUAL BACKGROUND

On January 19, 1979, the district entered into a collective bargaining agreement with the association. Thereafter on June 15, 1979, the district entered into a written grant of use agreement with La Verne, providing for use by La Verne of certain of the district's facilities for the operation of a summer school for the summer of 1979. Pursuant to said grant of use agreement, La Verne was to conduct educational classes on the school premises, which were to be under the sole and exclusive jurisdiction and control of La Verne, and La Verne was to pay to the district a use charge as required by Education Code section 40054 because a fee was in turn to be charged by La Verne to persons enrolling in its classes.

For a number of years prior to 1978, the practice of the district in reference to summer school classes operated by it varied from conducting a fairly broad range of educational classes and programs to conducting a very minimum range of classes and programs, to conducting no summer classes and programs at all. While the district had received financial support for its summer school classes and programs from state funds prior to 1978, this ceased in 1978, as a consequence of which the district determined that it would only conduct summer classes and programs in 1978 and 1979 for seniors needing credits to graduate and substantially handicapped students. Thus in the summers of 1978 and 1979 only such limited classes and programs were conducted by the district, these being required by the Legislature as a prerequisite to the district's receipt of state-surplus funds which were required by the district to operate its regular academic year educational programs. In those two summers the district employed a limited number of teachers to conduct the classes and programs for graduating

seniors and handicapped pupils pursuant to the provisions of the collective bargaining agreement. Those limited summer schools in 1978 and 1979 conducted by the district were in fact the operation of the district itself, and La Verne had no connection therewith and did not participate in any way in those summer sessions conducted by the district.

## THE ISSUES

1. Is the establishment and maintenance of summer school classes and programs a mandatory requirement for California school districts?

2. Does the charging of tuition or fees for attendance at a summer school operated under a grant of use agreement between a school district and a private organization violate the constitutional right of all pupils to a free educational program?

3. Irrespective of tuition or fees, does a grant in use agreement permitting the operation of a summer school on public school premises by a private organization constitute a violation of California law or its Constitution?

4. Did the written grant of use agreement between the district and La Verne constitute a violation of the collective bargaining agreement between the district and the association?

SUMMER SCHOOL CLASSES AND PROGRAMS
NOT MANDATED BY STATE LAW OR
CONSTITUTION

I

■ There is no statutory or constitutional support for any contention that summer school classes or programs constitute a mandatory requirement for California school districts. Article IX of the California Constitution does mandate that the Legislature shall provide for a system of free common schools to be operated in each district at least six months in every year. Pursuant thereto the Legislature has provided a comprehensive legislative scheme which requires school districts to provide certain basic courses of study (see Ed. Code, § 51000 et seq.), and which assures that such programs will be maintained in regular day schools for a school term of at least 175 days each year (see Ed. Code, § 41420). Pursuant to the constitutional mandate, the Legislature has

also authorized summer schools at the elementary level (Ed. Code, §§ 51730, 51731), as well as high school level (Ed. Code, § 37250). All of these sections provide that the governing body of a district *may* establish and maintain such summer schools. No mandatory requirement of summer school is found in any of these sections, and it must therefore be concluded that the establishment and maintenance of summer school classes and programs is only permissive rather than mandatory. In oral argument before the trial court, counsel for appellants conceded that the provisions of the Education Code make summer school a discretionary matter with the governing board of the district rather than a mandatory one. However, appellants appear to take the position that since summer schools have traditionally been offered, without fee, by public school districts, that these repeated offerings under permissive state regulations have somehow transformed the permissive nature of summer schools under the statutes to a mandatory requirement that summer schools be offered by school districts. As already indicated, the district has in past years conducted summer classes and programs of various dimensions. Since the passage of Proposition 13, however, the district has conducted summer programs only as required by the Legislature to assure disbursement of state surplus funds to the district for use during the normal school year. Appellants have failed to demonstrate by any citation of authority or otherwise that the mere fact that summer school programs and classes have been offered in the past results in a modification of the statutory provisions regarding summer schools so as to make them mandatory rather than permissive. Having failed in this task, the contention is rejected, and we hold that summer school classes and programs are not mandated under California law.

VALIDITY OF CHARGING TUITION OR
FEES BY PRIVATE ORGANIZATION
UNDER GRANT OF USE AGREEMENT
WITH SCHOOL DISTRICT COVERING
USE OF PUBLIC SCHOOL PREMISES

I

■ It is absolutely clear that pupils attending public schools operated by local school districts in California are entitled to attend those schools free of any charge or tuition not specifically authorized by law. As already indicated, this right is guaranteed by article IX of California Constitution, and is further provided for by section 350 of title 5 of the California Administrative Code, which provides that a pupil en-

rolled in a school shall not be required to pay any fee, deposit or other charge not specifically authorized by law. It is also clear that there are no laws authorizing fees or other charges for summer school operated by local school districts. Respondents fully agree with this proposition, and point out that the evidence demonstrates that all of the school operations of the district have always provided a full and complete educational program in its regular academic year school term. The summer classes and programs conducted by the district have likewise always been free of any charge to the pupils, including those classes and programs for seniors needing credits to graduate and handicapped pupils in the summer of 1978 and 1979. However, appellants and respondents part company on the issue as to whether the school operation of La Verne under the grant of use agreement was a school operation conducted by the district, or was a private operation conducted by La Verne. If that summer school operation was in fact a public school operation conducted by the district, appellants' contention that it would violate constitutional and statutory proscriptions against the charging of tuitional fees would be well taken. However, as we will indicate hereafter, we conclude that the La Verne operation was a private operation of that organization and not a public school operation by the district.

### Validity of Grant of Use to Private Organizations to Operate Summer Schools on Public School Premises

### I

Appellants contend that the agreement covering the grant of use to La Verne constituted a violation of article IX, section 6, of the California Constitution, which provides, in relevant part, as follows:

"The Public School System shall include all kindergarten schools, elementary schools, secondary schools, technical schools, and State colleges, established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them. No school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System."

It is appellants' contention that the grant of use agreement executed between the district and La Verne violated this constitutional provision

in that it transferred a part of a public school, i.e., the summer session, from the public school system and placed the same under an authority other than one included within that public school system, i.e., La Verne. Putting it another way, appellants contend that even though the grant of use agreement provided that La Verne shall be solely responsible for determining and administering the educational program offered by it pursuant to the agreement, that nevertheless the summer school program of La Verne constituted a part of the public school system operated by the district and was consequently violative of article IX, section 6.

## II

If we were to assume that the summer school operation of La Verne provided for in the grant of use agreement remained a part of the public school system, there is little doubt but that the arrangement would be violative of said constitutional provision. However, respondents contend that the La Verne summer school was in fact its own private operation pursuant to the specific terms of the grant of use agreement, and that it follows there was no transfer of any school from the public school system nor was any part thereof placed under the jurisdiction of any authority other than those included within the public school system.

Respondents point out that the grant of use of its facilities by the district to La Verne was made pursuant to section 40040 et seq. of the Education Code, which specifically authorized such agreements. The record demonstrates that the grant of use in question was strictly in accordance with all of the provisions of that legislative authorization. While the sections do contain some restrictions on such grants of use, the record further demonstrates that all of those restrictions were complied with by the terms of the agreement.

## III

While it appears to be uncontroverted that the district did in fact comply with all of the legislative provisions regarding grants of use, appellants nevertheless point out that the primary aspect to consider on this issue is whether there has been a transfer of control, citing *California Sch. Employees Assn. v. Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46 [111 Cal.Rptr. 433], where the court held that a transfer of control would indirectly transfer a part of the administrative system and be violative of article IX, section 6, of the Constitution.

While this statement of the applicable principle of law is no doubt correct, the question as to whether there has been a transfer of control is a factual issue to be resolved by the trier of fact. ■ Implicit in the conclusion reached by the trial court in denying injunctive relief and writ of mandate is that there was in fact no transfer of control by the district to La Verne, but on the contrary the operation of the summer school by La Verne was a completely separate and distinct operation from that of the school district pursuant to the provisions of the grant of use agreement. Thus the trial court rejected the basic contention of appellants that the classes and programs conducted by La Verne were, in actuality, classes and programs of the district. It is presumed that the trial court determined that factual contention adverse to appellants. In the absence of findings, on appeal every intendment is in favor of the judgment, as it is presumed that every act or inference essential to support of the judgment and warranted by the evidence was found by the trial court. (*California Teachers Assn.* v. *Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556 at p. 558 [145 Cal.Rptr. 100].) ■ We are without power to substitute our deductions for those of the trial court. All factual matters must be viewed most favorably to the respondents and in support of the judgment. The appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing. It follows, therefore, that all conflicts must be resolved in favor of the respondents. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480].)

■ The district's superintendent specifically testified in his declaration that the district conducted no summer classes or programs in 1978 or 1979 other than the aforementioned classes for graduating seniors and handicapped students; that the classes and programs conducted by La Verne pursuant to the agreement were solely and exclusively operated, maintained and conducted by La Verne, with no control over or responsibility for such classes and programs by the district; and that the classes and programs conducted by La Verne were not classes or programs of the district, nor had the district attempted to subcontract or delegate to La Verne any function of the district with reference to the operation of its schools. In addition to that testimony, the grant of use agreement itself makes it very clear that the classes and programs to be conducted by La Verne were not those of the district. Among other things, the agreement provides that La Verne would not offer courses offered by the district during the same summer session, that La Verne would be solely responsible for determining and administering the programs offered by it as well as collecting its tuition fees, that all

employees would be selected and hired solely by La Verne for its operation, that its employees would be solely and exclusively subject to its direction and control, that La Verne would bear all liabilities and expenses imposed by law or contract incident to the employment, including workmen's compensation insurance, unemployment insurance, social security contributions and tax withholdings, and that the district would have absolutely no authority of any kind concerning any matter, cause or thing whatsoever in connection with La Verne's classes and programs that was not specified in the agreement. Finally, the agreement provides that it shall not be construed as constituting La Verne as a partner, employee or agent of the district. Based upon these contractual provisions as well as the declarations furnished to the court by respondents, it appears clear that the grant of use provided for an operation of the summer school completely separate and distinct from any operations of the district and was not violative of article IX, section 6, of the California Constitution, but rather was strictly in accordance with all of the statutory provisions of the Education Code dealing with grants of use. Consequently, appellants' contention that the grant of use agreement violated any provision of law or the California Constitution is rejected.

## Breach of Collective Bargaining Agreement

### I

Appellants contend that the grant of use agreement between the district and La Verne breaches certain provisions of the collective bargaining agreement between the district and the teachers association. Among other things, the collective bargaining agreement provides that the district retains and reserves the right to determine the subcontracting of services and functions, except where such subcontracting would result in the reduction in the number of teacher employees subject to the agreement. In addition, the collective bargaining agreement contains a salary schedule specifically for summer school employees, the lowest rate of which is higher than the flat hourly rate of $10 offered by La Verne. It is appellants' position that the direct result of the grant of use agreement would be a reduction in the number of teacher employees, a reduction in the salary scale below the minimum required by the collective bargaining agreement, as well as a loss of other protections afforded by the collective bargaining agreement, including the grievance and evaluation procedures and various health and welfare

benefits provided therein, all of which would constitute a breach of the agreement.

No violation is contended by the appellants as to the district's operation of its own limited summer school program for seniors needing credits to graduate and handicapped students. Appellants' position would be well taken if the La Verne operation of its own summer school were a part of the district's summer school on a subcontract basis. As already indicated, the flaw in appellants' position is that in fact the summer programs of the district and the summer programs of La Verne were completely separate and distinct from each other. It follows that the grant of use agreement had no impact on the teachers' rights under the collective bargaining agreement. No teachers have been laid off, no salaries have been reduced, nor have any rights been lost to the teachers as a result of the grant of use agreement.

It should further be pointed out that the character of the La Verne operation on the school premises did not differ from some 65 other grants of use to other organizations during the 1978-1979 school year of the district, some of which were educational and involved the charging of fees. These included Greek classes, YMCA activities, dancing classes, parent education classes, orchestra activities, sports club activities, etc. It could not be seriously contended that any of these private activities would violate the collective bargaining agreement. None of them involved the transferring or delegating of a school program or activity by the district to the users of the school premises. The same is true as to the arrangement with La Verne, and thus there has been no breach of the collective bargaining agreement by the district by virtue of the grant of use agreement with La Verne.

DISPOSITION

THE JUDGMENT DENYING THE WRIT OF
MANDATE WAS ON THE MERITS

I

■ A reasonable interpretation of the trial court's actions leads to the conclusion that the denial of the petition for writ of mandate was intended to be and was in fact a disposition on the merits. Consequently, the judgment appealed from was on the merits of plaintiffs' causes of action for a petition for writ of mandate. In denying the issuance of

the writ, the trial judge stated essentially that he was denying the extraordinary relief of the writ "...not only because the showing is insufficient, but I just don't believe that legally they are entitled to it...." It can reasonably be inferred from this language that the trial judge intended to deny the petition for writ of mandate on the merits, particularly since the court thereafter executed the judgment prepared by appellants' counsel which specifically states that "The petition for writ of mandate sought by plaintiffs, and each of them, is denied." This conclusion is not altered by the comment of the court during the hearing on the petition for writ of mandate where denying the writ and injunctive relief, the court stated to appellants' counsel that "...*if* it [the case] goes to trial, you may be persuasive. I don't think so, Mr. Gustaffson." (Italics added.) It is reasonable to conclude from the above comments of the court and the language of the judgment that it was intended as a final one on the merits of the causes of action for writ of mandate. It should also be noted that it was counsel for appellants who prepared the judgment for the court's signature and thereafter took this appeal from what they obviously intended as a final judgment. Having prepared the judgment and having taken this appeal, it is difficult to understand how appellants can now be heard to contend that the petition for writ of mandate was not denied on the merits or that the judgment was not a final judgment insofar as the denial of the petition for the writ of mandate is concerned.

In *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 456 [129 Cal.Rptr. 216], the court held that the granting of a peremptory writ of mandate was a final determination of the rights of the litigants and therefore constituted a final judgment within the meaning of Code of Civil Procedure section 1064, providing that a judgment in a special proceeding is the final determination of the rights of the parties therein. *Healdsburg* is clearly distinguished from *Gibson* v. *Savings & Loan Commissioner* (1970) 6 Cal.App.3d 269 [85 Cal. Rptr. 799], where the order denying an alternative writ of mandate was held not to be a final order because the trial court specifically indicated that it was not dismissing the petition for writ of mandate and was denying it without prejudice to applying for further relief. In *Kingston* v. *Dept. of Motor Vehicles* (1969) 271 Cal.App.2d 549 [76 Cal.Rptr. 614], the trial court specifically denied the petition for writ of mandate as was specifically done by the court herein, and this was held to be a final order, and as indicated at page 552 by the court "...by necessity no further action is contemplated by the court." Here, as in *Kingston*, the trial court had all of the facts before it which appellants could mus-

ter, clearly considered all·of such facts, and determined that appellants were not legally entitled to any relief. The judgment of the court herein was therefore a final decision on the merits of the petition for writ of mandate.

## II

Having determined that the judgment entered by the trial court was on the merits of appellants' causes of action for the writ of mandate, it follows that the merits of the said causes of action for writ of mandate are now before this court for disposition, and we conclude that the trial judge correctly ruled on the merits that appellants were not entitled to any relief by way of writ of mandate. It would also follow that the trial court was correct in denying appellant's request for injunctive relief, which in fact was a denial of a preliminary injunction, since that was the injunctive relief requested by appellants in the motion filed by them with the trial court.

The judgment is affirmed.[1]

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 22, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

[1]We note without deciding that based on the principles of the law of the case, our opinion herein well may be dispositive of appellants' remaining causes of action for a permanent injunction and declaratory relief, depending upon the evidence produced at trial.