TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
------------------------------------------------
                         :
        OPINION          :
                         :
           of            :     No.  86-604
                         :
   JOHN K. VAN DE KAMP   :     December 17, 1987
      Attorney General   :
                         :
   RONALD M. WEISKOPF    :
  Deputy Attorney General :
                         :
------------------------------------------------------------------
```

THE HONORABLE DON ROGERS, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:

May a high school district admit students enrolled in private schools during the regular school year to classes in the district's core academic area summer school program?

CONCLUSION

A high school district may lawfully admit students enrolled in private schools during the regular school year to classes in the district's core academic area summer school program, provided such admissions do not provide a substantial benefit to the private schools.

ANALYSIS

Article IX, section 5 of the California Constitution calls for the Legislature to "provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year . . . ." Pursuant thereto, the Legislature has adopted a comprehensive scheme which requires school districts to provide and maintain certain courses of study in grades 1 through 12 (Ed. Code, Pt. 26, chs. 1 & 2, § 51000, et seq., § 51200, et seq.) in regular day schools for 175 days each year. (Id., § 41420.)[1]

_____

[1]All unidentified statutory references herein are to the Education Code.

The Legislature has also authorized the governing boards of elementary school districts and high school districts to maintain various types of summer school programs. (§§ 51730, 37250-37253, respectively; California Teachers Assn. v. Board of Education (1980) 109 Cal.App.3d 738, 745.) One of them, authorized by section 37253, subdivision (a) (Stats. 1984, ch. 97), is a high school district's program of "instruction in mathematics, science, or other core academic areas designated by the Superintendent of Public Instruction." In its regard we are asked whether a high school district may admit pupils who do not attend the district's public schools during the regular academic year but attend private schools instead.[2] We conclude that in its discretion a high school district may permit such students to attend core academic summer school classes it offers pursuant to Education Code section 37253, subdivision (a), with some caveats.

School districts have been granted general authority under section 35160 to initiate and carry on any program or activity compatible with law[3] and they have been granted broad permissive authority to offer summer school programs if they wish. (Cf. Pt. 22, ch. 2, art. 4, § 37250, et seq.; California Teachers

---

[2]Under California's Compulsory Education Law (Ed. Code, tit. 2, div. 4, pt. 27, ch. 2, § 48200 et seq.), every person between 6 and 16, not otherwise exempt, is required to attend public full-time day school. (§ 48200.) That obligation though may be satisfied, inter alia, by attending a private full-time day school that meets certain statutory standards. (§§ 48220, 48222; cf. Roman Cath. etc. Corp. v. City of Piedmont (1955) 45 Cal.2d 325, 330.) While we have loosely referred to students who attend such schools as "private school students" it should be noted that their status in the summer months is not that easily categorized. For example, our generic categorization would not automatically apply to a student who attended a private school during the prior academic year but intends to attend public school in the fall. In light of our conclusion that a school district may admit "private school students" to classes in its core academic area summer school program, we need not dwell on the "status" question.

[3]Section 35160 provides:

"On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

(See also Cal. Const., art. IX, § 14; cf. 67 Ops.Cal.Atty.Gen. (1980) 851, 853; 60 Ops.Cal.Atty.Gen. (1977) 206, 207-208; 60 Ops.Cal.Atty.Gen. (1977) 177, 180.)

<u>Assn.</u> v. <u>Board of Education</u>, <u>supra</u>, 109 Cal.App.3d at 745.) Section 37250 provides:

> "The governing board of a district maintaining one or more high schools <u>may maintain</u> a summer school at any of such high schools during the period between the close of one academic year and the beginning of the succeeding academic year in accordance with rules and regulations of the State Board of Education.

> "The term 'academic year' as used in this section means that portion of the school year during which the regular day high school is maintained, which period must include not less than the number of days of teaching required to entitle the district to apportionments of state funds." (Emphasis added.)[4]

The governing board of a high school district that offers summer school instructional programs may also offer "summer school programs for instruction in mathematics, science, or other core academic areas designated by the Superintendent of Public Instruction." (§ 37253, subd. (a).)[5] The other areas designated

_____

[4]"No mandatory requirement of summer school is found in section [37250] and it must therefore be concluded that the establishment and maintenance of summer school classes and programs is only permissive rather than mandatory." <u>California Teachers Assn.</u> v. <u>Board of Education</u>, <u>supra</u>, 109 Cal.App.3d 738, 745.) Under section 37252, however, a governing board of a district maintaining any of the grades 7 through 12--i.e., high school districts (cf. § 52; <u>Meyer</u> v. <u>Board of Trustees</u> (1961) 195 Cal.App.2d 420, 425)--<u>must</u> offer summer school programs for pupils enrolled in those grades who have not met the district's adopted standards of proficiency in basic skills (§ 37252, subd. (a); cf. § 51215, et seq.), but that mandate involves a program different from the core academic area program discussed herein. It also does not concern private school pupils, but only those attending the public schools of the district. (Cf. § 51215, et seq.)

[5]Section 37253 provides in pertinent part:

> "(a) The governing board of any school district which offers summer school instructional programs pursuant to this article [i.e., art. 4] may also offer summer school programs for instruction in mathematics, science, or other core academic areas designated by the Superintendent of Public Instruction.

> "(b) . . . . . . . . . . . . . . . . . . . . . . . . . .

> "(c) . . . . . . . . . . . . . . . . . . . . . . . . . .

by the Superintendent include social science/history, English language/arts, foreign language, fine arts and computer education. (Letter, State Department of Education (Jan. 29, 1987).)

As its name implies, core academic areas embrace those subjects which are basic to a student's education: They are an integral part of the high school curriculum (§ 51220, cf. § 51007)[6] and but for the last, a student may not receive a diploma of graduation from high school without completing them. (§ 51225.3.)[7] Since under section 48222 a private school must "offer instruction in the several branches of study required to be taught in the public schools of the state," private high schools also have a duty to offer instruction in the subjects covered by the core academic area curriculum, and a student who attends a private high school must take them as a prerequisite to graduation. (§§ 48222, 51225.3; cf. In re Shinn (1961) 195 Cal.App.2d 683, 686-687.)

School districts are reimbursed by the state for core academic area summer school programs in accordance with a formula, set forth in section 42239, which essentially limits the reimbursement to an amount computed upon a factor of "5 percent of the district's total enrollment for the prior fiscal year . . . ." (§ 42239, subd. (e)(1).)[8] In its discretion a district may enroll

---

"(d) The Superintendent of Public Instruction shall adopt rules and regulations necessary to implement this section, including, but not limited to, the designation of academic areas other than mathematics and science as core academic areas."

[6]Section 51200 provides that the provisions of chapter 2 of part 28 (of div. 4 of tit. 2) prescribe the requirements for courses of study in grades 1 through 12. (Cf. § 51014 "course of study".) Section 51220 provides that the course of study for grades 7 through 12 include courses in the following areas: (a) English, (b) social sciences, (c) foreign language(s), (d) physical education, (e) science, (f) mathematics, (g) fine arts, (h) applied arts, (i) vocational-technical education, and (j) driver education. Section 51007 stresses the importance of computer education programs in strengthening technical skills.

[7]Section 51225.3 provides that commencing with the 1986-87 school year, no pupil may receive a diploma from high school who in grades 9 through 12 has not completed all of the following: three courses in English, two courses in mathematics, two courses in science, three courses in social studies (history, government and civics), one course in visual or performing arts or foreign language, and two courses in physical science.

[8]Section 42239 provides in part:

more than 5 percent of its students in core academic summer school programs as long as the state apportionment to the district does not exceed that computed amount. (_Id._, subd. (e)(1); cf. § 75 ["may" is permissive].)  In such a case, the district would have to finance the extra enrollment from other resources.  (_Id._, subd. (e)(2); cf., § 41000, et seq.)

May a high school district then, admit private school students to a summer school core academic program?  We believe so.

Section 48030 of the Education Code provides:

"Any graduate of the elementary schools of this state and any other person who furnishes to the principal of the high school and to the county or to the city superintendent of schools having immediate jurisdiction

----

"For the 1984-85 fiscal year and each fiscal year thereafter, the county superintendent shall compute an amount for each school district's summer school attendance in the following manner:

"(d)  Commencing in the 1984-85 fiscal year, summer school attendance shall be the sum of paragraphs (1) and (2).

"(1)  The hours of attendance in the categories identified in Section 42238.6 as it reads in the 1983-84 fiscal year.

"(2)  Any summer school hours of attendance for mathematics, science, or other core academic areas designated by the Superintendent of Public Instruction.

"(e)(1) <u>A school district's maximum entitlement for reimbursement for pupil attendance in summer school programs offered pursuant to paragraph (2) of subdivision (d) shall be an amount equal to 5 percent of the district's total enrollment for the prior fiscal year times 120 hours</u>, times the hourly rate for the current fiscal year determined pursuant to subdivision (c).

"(2)  A <u>district may enroll more than 5 percent of its students</u>, or may enroll students for more than 120 hours per year in summer school programs offered pursuant to paragraph (2) of subdivision (d), as long as the total state apportionment to the district for those programs does not exceed the amount computed pursuant to paragraph (1).  A district shall earn its entitlement at the per pupil hourly rate pursuant to subdivision (c)." (Emphases added.)

over the high school, satisfactory evidence of his fitness for high school work, may attend high school in the district in which he resides under such regulations as the high school board may prescribe."

In 39 Ops.Cal.Atty.Gen. 149 (1962) we were asked whether the governing board of an elementary school district might allow a pupil who attends a full time private school to also regularly attend one or more classes in a public elementary school. We concluded that in its discretion the governing board of the district might allow a pupil to attend certain classes, including summer school classes. ( Id. at 150-151.) We find the same discretion with high school districts.

In that earlier opinion, we noted that no statute prohibited an elementary school board from establishing special classes and adopting rules and regulations designed to permit the privately schooled child to attend one or more of them. (39 Ops.Cal.Atty.Gen. at 150.) To the contrary, we viewed the broad provisions of the Education Code that dealt with the authority of elementary school districts to provide "special day and evening classes and summer schools" as making it apparent that the Legislature intended that the school board should have the power to provide special classes for other than these pupils admitted to and attending public elementary school. (39 Ops.Cal.Atty.Gen. at 151.)[9] We can extrapolate these answers to our situation.

As just mentioned, in 39 Ops.Cal.Atty.Gen. 149, we answered the cognate question with respect to elementary school districts in the affirmative, finding such discretion supported by

---

[9]Section 51730 authorizes the governing body of an elementary school district to establish and maintain "special day and evening classes and summer schools, consisting of special day or special evening classes or both."; section 51731 authorizes it to convene those classes "at such hours and for such lengths of time . . . and at such period and for such lengths of time during the school year as [it determines]"; and section 51732 authorizes the board to admit to "the evening elementary schools and the special day and evening classes of the elementary schools . . . such minors and adults as [it judges] may profit from the instruction offered." Since section 51730 contemplates that an elementary district's summer schools might consist of special day and evening classes, the authorization of section 51732 could apply and permit a board to admit non-public school minors to them. (39 Ops.Cal.Atty.Gen., supra, at 151; accord 12 Ops.Cal.Atty.Gen. 214 (1948).) And so we concluded that in its discretion an elementary school district governing board may admit private school pupils to one or more special classes it offers in its public school system, including by implication, summer school classes. (39 Ops.Cal.Atty.Gen., supra, at 149.)

the broad authority found in various statutes which authorize the maintenance of the various elementary school programs. (Id. at 151.) The core academic area program at issue here is offered by a high school district "which offers summer school instructional programs pursuant to [article 4 of chapter 2 of part 22 (§§ 37250-37253) of the Ed. Code]." (§ 37253, subd. (a).) It is true that no specific authority is found therein for a district to admit private school pupils to those programs, but we believe such authority may be found in other sections of the Education Code: The various statutes authorizing the various elementary school classes, find almost-parallel provision with respect to high school districts (i.e., § 37250 [authority to maintain summer schools], §§ 48040, 52500, et seq. [adult schools and evening high schools]), and from them we find a similar authority for high school districts to admit private school pupils to their core academic area summer school programs.

Regarding the time factor, sections 52501 and 52502 authorize the governing board of a high school district to establish "classes for adults"; section 52512 provides that "classes for adults may be maintained in conjunction with day or evening high schools . . . [or] day or evening adult schools"; and section 52505 provides that classes for adults may be convened at such hours and for such length of time during the day or evening and at such period and for such length of time during the school year as may be determined by the governing authority."[10] Since the

---

[10]Section 52502 provides:

"The governing board of a high school district or unified school district may establish classes for adults. If such classes result in average daily attendance in any school year of 100 or more, such districts shall establish an adult school for the administration of the program."

Section 52501 provides:

"The governing board of any school district maintaining secondary schools shall have power with the approval of the Department of Education to establish and maintain classes for adults, except program and classes in outdoor science education and conservation education as the term is employed in Section 8760, for the purpose of providing instruction in civic, vocational, literacy, health, homemaking, technical and general education."

Section 52512 provides:

"Classes for adults may be maintained in conjunction with day or evening high schools, day or evening

"school year" begins on the first day of July and ends on the last day of June" (§ 37200), it covers the time during which summer school classes are offered (§ 37250, supra) and thus, as we have concluded previously, special classes for adults may be maintained in the summer months . . . ." (12 Ops.Cal.Atty.Gen. (1948) 214, 217.)

With respect to the content of such classes, section 52504 provides that "classes for adults shall conform to any course of study and graduation requirements otherwise imposed by law or under the authority of law." (§ 52504, cf. § 52506.) We believe that such clearly includes core academic area subjects. (See fns. 6, 7, ante & accompanying text.)

Then, the "sixty-four dollar" factor--who may attend such classes -- is resolved by sections 52500 and 48040. The former provides that "[a]dult schools and evening high schools shall consist of classes for adults" and that "[m]inors may be admitted to such classes pursuant to section 48040." The latter section reads:

"Adult school and evening high schools shall be open for the admission of adults and of such minors as in the judgment of the governing board may be qualified for admission thereto. (Emphasis added.)

To recapitulate, section 52512 permits adult classes to be maintained in conjunction with day or evening high schools, and sections 52500 and 48040 permit adult schools and evening high schools to be "open for the admission of . . . such minors as in the judgment of the governing board may be qualified for admission thereto". We therefore accept the proposition that despite "the lack of clarity, if not confusion, in the various sections of the Education Code dealing with the establishment of classes during the

_____

community colleges, day or evening adult schools, or day or evening regional occupational centers."

Section 52503 provides:

"The governing board of a high school district or unified school district may establish and maintain one or more adult schools by resolution of the governing board."

Section 52505 provides:

"Such classes [for adults] may be convened at such hours and for such length of time during the day or evening and at such period and for such length of time during the school year as may be determined by the governing authority."

summer vacation period" (12 Ops.Cal.Atty.Gen., _supra_, 214, 215), a high school district does have authority to establish and maintain special classes during the summer vacation period in core academic area subjects and admit pupils to it other than those who are regularly enrolled in its public school system, if it deems them "qualified for admission thereto" pursuant to section 48040. (Cf. 39 Ops.Cal.Atty.Gen., _supra_, at 151; cf. 12 Ops.Cal.Atty.Gen., _supra_, at 217.) Such students "may attend [the] high school [classes] . . . under such regulations as the . . . board may provide." (§ 48030, _supra_.)[11]

The size of a summer school program will principally be determined by the available funds and student interest as indicated by the number of applications for it. When state funding is available to accommodate the total number of applicants, including those "private school" students who wish to attend, there would appear to be no reason to exclude them. In fact admitting the private school students in that situation could benefit the district and its regular students in several ways. To begin with a district could find itself in the position of needing a minimum number of students to enroll in summer school in order to make the program feasible. If an insufficient number of its own students applied for summer school enrollment, the district's authority to admit private school students might provide the additional students necessary to make it so. In such a situation, the primary benefits would accrue to the district and its students who might not otherwise be able to supplement their studies in a summer school program. Then, too, the admission of the private school students would increase the district's ADA used in calculating the state funding it will receive for its next year's program (§ 46330) and the benefit secured thereby will be enjoyed by the district and its regularly enrolled students after the private school students return to their private schools in the fall.

---

[11]We also note that the Legislature has specifically spoken to the issue of private school students attending classes in public schools in section 37113. The section provides that the governing boards of districts maintaining a high school "_shall_, subject to space being available, admit pupils regularly enrolled in non-public schools to enroll in vocational and shop classes and in classes relating to the natural and physical sciences." In 55 Ops.Cal.Atty.Gen. (1972) 393, 395, we concluded that the governing board of a high school district would not have to provide extra classes or additional teachers to accommodate the private students under the section. (55 Ops.Cal.Atty.Gen., _supra_, 393, 395 [former § 5665].) In light of the express legislative directive to enroll non-public school students in section 37113's limited high school courses subject to space availability, we perceive the ability of a district to enroll them in other classes as being within its considered discretion given the circumstances. (Cf. §§ 35160, 48040.)

Different considerations arise however when the number of applicants exceeds the capacity of the summer school program (determined by the available funds).  In that case a system of priorities must be developed to determine which applicants are to be admitted to the summer school program.  This is because section 42229, subdivision (e)(2) does not require a district to tap its own funds or other resources to even accommodate all of its own students who wish to participate in the program.  It "may" do so, but need not.  (§ 42239, subd. (e)(2); cf. § 75;   Tomlinson v. Pierce (1968) 178 Cal.App.2d 112, 117.)   In that situation the governing board may determine priority for admission on any reasonable basis consistent with constitutional and statutory requirements.

Accordingly, we conclude that a high school district in its discretion may admit private school pupils to a core academic summer school class subject to priorities it would establish given the limits of available state funding for the program.  But a word of caution is necessary.

As mentioned prefatorily, the core academic area program involves subjects which are basic to a student's education, are those which a private school is required to teach, and are among those a student must complete to be graduated from the private high school.  (See fns. 6, 7, ante, & accompanying text.)  When, as a general proposition, private school students are allowed to satisfy any of those subjects by taking a class in it elsewhere, as in a public school's core academic program, the private school may be relieved of its educational responsibility of "providing that class [and the necessary classroom space, the necessary teachers and the necessary support materials, including textbooks] for the student." (Klein, California Education Code section 37113--Permitting Parochial School Children to Attend Public School Classes Violates the California Constitution (1984) 24 Santa Clara L.Rev. 947, 962; cf. Aguilar v. Felton (1985) 473 U.S. 402, 406, 409; Grand Rapids School District v. Ball (1985) 473 U.S. 373, 375-379, 396-397; Americans United, etc. v. Porter (W.D. Mich. 1980) 485 F.Supp. 432, 435, 437; Snyder v. Charlotte Pub. Schools (Mich. 1984) 365 N.W. 2d 151, 161; Thomas v. Allegany County Bd. of Ed ., supra, 443 A.2d 662, 665-666; Norwood v. Harrison (1973) 413 U.S. 455, 463-464. When such is the case, a public benefit accrues to the private school which may run afoul of the constitutional prohibition.

Article IX, section 8 of the California Constitution prohibits the appropriation of public monies "for the support of . . . [a] school not under the exclusive control of the officers of the public schools." [12]  The language of the section "has remained

---

[12]Article IX, section 8 provides:

"No public money shall ever be appropriated for

unchanged since its proposal in the constitutional convention of 1878-1879 . . . [where] [i]t was approved without significant debate."  ( <u>Board of Trustees</u> v. <u>Cory</u> (1978) 79 Cal.App.3d 661, 665.)  The reports of the Convention proceedings indicate "the delegates were seriously concerned with assuring that public funds should only be used for support of the public school system they were creating in article IX of the Constitution."  (<u>Ibid</u>.)

In <u>California Teachers Assn</u>. v. <u>Riles</u> (1981) 29 Cal.3d 794, our Supreme Court held that section 60315 of the Education Code--which authorized the Superintendent of Public Instruction to lend textbooks used in the public schools to students attending non-profit, non-public schools--violated section 8 of article IX (and section 5 of article XVI)[13] of the California Constitution. (29 Cal.3d at 801, 813.)  Even though the textbooks were provided to the students and not to the schools, the latter were inexorably involved with the state program in selecting, receiving and storing the books for their students.  They directly benefitted from it, and since the benefit involved the schools' fundamental purpose, the education of the students, it could not be characterized as being indirect, remote, or incidental to pass constitutional muster under earlier cases which established that private schools might receive indirect or incidental benefits from an expenditure of public funds without a violation of article IX, section 8 taking place (e.g., <u>California Educational Facilities Authority</u> v. <u>Priest</u> (1974) 12 Cal.3d 593, 604;  <u>Board of Trustees</u> v. <u>Cory</u>, <u>supra</u>, 79 Cal.App.3d 661, 666-667; <u>Bowker</u> v. <u>Baker</u> (1946) 73 Cal.App.2d 653,

---

the support of any sectarian . . . school, or any school not under the exclusive control of the officers of the public schools."

[13]Article XVI, section 5 of the Constitution prohibits the grant of anything in support of a <u>sectarian</u> school.  The possibility that such religiously-affiliated or sectarian schools would be involved herein is real.  In <u>Riles</u>, the facts showed that 87 percent of the private school participating in the textbook loan program under former sections 60315 and 60246 (therein declared to be unconstitutional) were religious schools.  (29 Cal.3d at 799.) The State Department of Education's statistics for 1982-83 showed that 64 percent of private schools (having ten or more students) were religiously affiliated.  (<u>Enrollment and Staff in California Private Elementary Schools and High Schools</u>, Cal. Dept. of Ed. 1982-83; see also, <u>Meek</u> v. <u>Pittenger</u> (1975) 421 U.S. 349, 364 [75% of Pennsylvania's compulsory attendance private schools eligible for state loan of textbooks were religiously affiliated]; <u>Aquilar</u> v. <u>Felton</u>, <u>supra</u>, 473 U.S. 402, 406 [92%]; <u>Wolman</u> v. <u>Walter</u> (1977) 433 U.S. 229, 234 [96%]; Klein, <u>California Education Code Section 37113--Permitting Parochial School Children to Attend Public School Classes Violates the California Constitution</u>, <u>op. cit. supra</u>, 24 Santa Clara L.Rev. at 947 fn. 2.)

663, 666; compare <u>Committee for Public Education</u> v. <u>Nyquist</u> (1972) 413 U.S. 756, 771-772).  (29 Cal.3d at 809-811.)

Funding for core academic summer school programs involves an appropriation of public funds (§ 42239), and private schools are not "under the exclusive control of the officers of the public schools."  (Cf., § 48222, 60026.)  A constitutional question could thus arise as to whether private schools would "benefit" when their students are able to satisfy required courses by taking them in a core academic area class offered in a high school district's summer school program, and whether the character of the "benefit" results in an impermissible "support" to the private school under article IX, section 8.  (<u>California Teachers Assn</u>. v. <u>Riles</u>, <u>supra</u>, 29 Cal.2d 794, 809.)

We believe the <u>Riles</u> rationale has its limits.  We do not think that the courts would hold that every governmental program or service which involves a private school's fundamental purpose of the education of its students would be held unconstitutional as a direct benefit to the private school.  For example, the use of public libraries and museums by private school students often provides education to such students by providing research materials for school assignments.  We do not think the courts would hold that private school students could not use such public facilities in ways that enhance their education because to do so would constitute a direct benefit to the private schools they attend.  Instead we believe such public institutions would provide, if at all, only an insubstantial benefit to the private schools which would be considered "indirect" or "remote" under the <u>Riles</u> rationale.

Accordingly, we do not believe the constitutional impermissibility would be reached by private school students occasionally attending summer classes in the public schools.  The private schools would still have their statutory obligation to teach the required subject(s) (§ 48222) and any "benefit", if indeed it could be characterized as such, from the student taking the class(es) would be insubstantial.  The situation would be quite different from that in <u>Riles</u> because there would be no direct connection between the state program and the schools to involve the state in their teaching processes or otherwise foster an inexorable connection with them.  (Compare, <u>Aguilar</u> v. <u>Felton</u>, <u>supra</u>, 473 U.S. 402, 409; <u>Grand Rapids School District</u> v. <u>Ball</u>, <u>supra</u>, 473 U.S. 373,387-391, 395-397; <u>Norwood</u> v. <u>Harrison</u>, <u>supra</u>, 413 U.S. 455, 465-466 with <u>Committee For Public Education</u> v. <u>Regan</u> (1980) 444 U.S. 646, 654-657; <u>Wolman</u> v. <u>Walter</u>, <u>supra</u>, 433 U.S. 229, 236-238 & 251 fn. 18; <u>Meek</u> v. <u>Pittinger</u>, <u>supra</u>, 421 U.S. 349, 359-362.) Rather, the active participants in the process would be the students, their parents, and the district, and not the private schools.  Indeed, it is not even clear that a nonpublic school would necessarily be aware that one of its students was attending a public summer school.

A recent high court decision elucidates the issue. <u>Witters</u> v. <u>Wash. Dept. of Serv. For The Blind</u> (1986) 474 U.S. 481 involved a challenge to the expenditure of public funds under a program to provide special education and/or training to assist visually handicapped persons overcome vocational handicaps in a case involving a student pursuing a theological career. Challenge was made on the ground that the expenditure in the situation violated the state constitutional prohibitions against the expenditure of public funds to support religion and using public funds to support schools that were not free from sectarian influence. (Compare, Cal. Const. art. XVI, § 5, art. IX, § 8.) The Washington Supreme Court had held that in providing financial assistance to a theology student, the program had the primary effect of advancing religion. The high court disagreed.

It noted that under the program aid went directly to the student who transmitted it to the educational institution of his choice. Thus the court said that any "aid" under the program that might ultimately flow to a religious institution would do so "only as a result of the genuinely independent and private choices of aid recipients" ( 474 U.S. at 487), and it thus distinguished the case from others, such as <u>Grand Rapids School District</u> v. <u>Ball</u>, <u>supra</u>, and <u>Wolman</u> v. <u>Walter</u>, <u>supra</u>, where no meaningful distinction could be made between aid to the student and aid to his or her school so that to the former inevitably (and impermissibly) flowed to the latter. (474 U.S. at 487, fn. 4.)

The same result would undoubtedly be reached in a California case involving Education Code section 56300, et seq. which directs school districts to "actively and systematically seek out all individuals with exceptional needs, ages 0 through 21 years, <u>including children not enrolled in public school programs</u>, who reside in the district" for assessment of their needs, the planning of individualized instructional programs and referral for instruction or other services. The Legislature has realized that such aid would be provided the children and not their private schools.

Similarly in the situation presented herein, it would not necessarily follow that because a private school student might benefit from a public school summer program that his or her private school would also automatically "benefit" thereby. In fact since the content and instructional methods of the summer school classes would remain at all times within the control of the school district, it is possible that the courses could even conflict with the approach of the private school
.
There are some situations when the constitutional hurdle might act as a bar. For example where attendance by private school students at a public summer school affects the educational program of the private school, or where the number of its students taking classes in required subjects in summer school is such that the

school might be relieved of its responsibility to teach them in significant respects, one could no longer say with certainty that the school would not "benefit" thereby or that the benefit would be "indirect" and not involve its educational mission. The same would be true where a connection between the private school and the public district is such that the two are inextricably intertwined in formulating or providing the educational effort for the students. But such happenings would depend on the circumstances involved in a particular situation. As a general matter though, we do not believe that the ordinary summer school scenario would work such significant impacts of material "benefit" to private schools.

With the caution as to the constitutional prohibition on state support for non-public schools in mind then, we conclude that a high school district may admit private school students to classes in its core academic area summer school program along priorities it develops to meet constraints of available funding.

* * * * *

14. 86-604